UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TAHEEN HAYES,

                              Plaintiff,              9:16-CV-1368
                                                     (TJM/CFH)
              v.

T. DAHKLE, et al.,

                              Defendants.

_____

APPEARANCES:

TAHEEN HAYES
05-A-3850
Plaintiff Pro se
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

## I.    INTRODUCTION

        Pro se plaintiff Taheen Hayes ("plaintiff") commenced this civil rights action asserting

claims arising out of his confinement in the custody of the New York State Department of

Corrections and Community Supervision ("DOCCS").  Dkt. No. 1 ("Compl.").  By Decision

and Order filed on December 15, 2016 (Dkt. No. 5) (the "December Order"), this Court

granted Plaintiff's IFP application and reviewed the sufficiency of the complaint in accordance

with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.  On the basis of that review, the Court

dismissed the following, without prejudice: (1) Eighth Amendment claims against defendants

Superintendent Daniel F. Martuscello ("Martuscello"), Deputy of Security, Raymond Shanley

("Shanley"), Inmate Counselor J. Iarrusso ("Iarrusso"), Correction Officer T. Dahkle ("Dahkle"), Correction Officer Jason A. Meier ("Meier"), Correction Officer Gregory E. Langtry ("Langtry"), Correction Officer Stephen A. Bence ("Bence") and Correction Officer E. Coon ("Coon"); (2) supervisory claims against Martuscello and Shanley; (3) retaliation claim against Dahkle; and (4) constitutional claims against Iarrusso for failing to process grievances. Dkt. No. 5 at 20. Plaintiff was given the opportunity to file an amended complaint to assert any claim that was dismissed without prejudice. *See id.* at 20, n. 12. The Court ordered defendant Correction Officer K. Hoffman ("Hoffman"), Meier, Langtry, Bence, and Coon to respond to plaintiff's retaliation claims.[1] *See id.* at 20.

Presently before the Court is plaintiff's amended complaint. Dkt. No. 8 ("Am. Compl.").

## II.    LEGAL STANDARD

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. §1915A(b) was discussed at length in the December Order and it will not be restated in this Decision and Order. *See* Dkt. No. 5 at 2-4. The Court will construe the allegations in plaintiff's amended complaint with the utmost leniency. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to a less stringent standards than formal pleadings drafted by lawyers.").

## III.    SUMMARY OF AMENDED COMPLAINT[2]

---

[1]      Defendants have not filed an answer.

[2]      Plaintiff annexed exhibits to the amended complaint. Dkt. No. 8-1. To the extent that the exhibits attached to the amended complaint are relevant to the incidents in the amended complaint, the Court will consider the documents. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (holding that the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or
(continued...)

Plaintiff, an inmate currently confined at Clinton Correctional Facility ("Clinton C.F."), asserts claims related to his confinement at Coxsackie Correctional Facility ("Coxsackie C.F."). *See* Am. Compl, *generally*. On March 2, 2016, plaintiff filed a grievance (CX-18859-016), related to his dreadlocks.[3] *See* Dkt. No. 1-1 at 2. On April 15, 2016, at 10:30 a.m., Dahkle ordered plaintiff to step out of his cell, in the D-1 Gallery, for a search. *See* Am. Compl. at 4. Plaintiff complied with Dahkle's order to turn and face the wall for a pat frisk. *See id.* During the pat frisk, Dahkle pressed his genitals against plaintiff's buttocks and ran his hands into the interior portion of plaintiff's buttocks. *See id.* During the cell search, Dahkle asked plaintiff sexually explicit questions related to plaintiff's gender identification including, "do you consider yourself a male or a female?" *See id.* at 4-5. Later that day, plaintiff reported the incident on the PREA hotline. *See* Am. Compl. at 5.

On April 17, 2016, plaintiff filed a grievance (CX-18908-016) charging Dahkle with sexual assault.[4] *See* Am. Compl. at 5; Dkt. No. 1-1 at 2. On April 18, 2016, plaintiff reported the incident to Martuscello while the Superintendent was making rounds in the cafeteria.

---

[2](...continued)
documents incorporated in it by reference). In addition, plaintiff's original complaint included exhibits. Dkt. No. 1-1. Plaintiff incorporated, by reference, the same exhibits attached to the original complaint, but failed to actually attach the exhibits to the amended complaint. "Although it is well settled that an amended complaint supersedes a prior complaint in its entirety, it is clear to the court that plaintiff intended to attach the exhibits to his amended complaint." *Wellington v. Langendorf*, No. 12-CV-1019 (FJS/DEP), 2013 WL 3753978, at *3 (N.D.N.Y. July 15, 2013). To require plaintiff to file an amended complaint that includes the original exhibits is, "an unnecessary procedural hoop that would waste resources and delay resolution of this action." *Alexander v. U.S.*, No. 13-CV-678, 2013 WL 4014539, at *4 (N.D.Cal. Aug. 5, 2013). Because plaintiff is a pro se plaintiff, the Court will consider the exhibits and documentation attached to the original complaint as incorporated by reference in the amended complaint.

[3]    On March 31, 2016, the grievance was resolved after a hearing. Dkt. No. 1-1 at 2. The record does not contain any information related to the grievance including the substance of the grievance or the identity of the correctional officer(s) involved in the complained of incident(s).

[4]    In the amended complaint, plaintiff claims that he filed CX-18908-016 on April 17, 2016. *See* Am. Compl. at 5. Documentation annexed to the original complaint reveals that the grievance was filed on April 19, 2016. *See* Dkt. No. 1-1 at 2.

*See* Am. Compl. at 5.  Martuscello took plaintiff's identification card and advised, "someone will be coming to see you soon."  *See id.*

On May 9, 2016, plaintiff was transferred to C-1 Housing unit.  *See* Am. Compl. at 5. Dahkle was working in that unit and immediately began verbally harassing plaintiff.  *See id.* at 5-6.  Dahkle made sexually explicit statements, called plaintiff derogatory names, and told plaintiff "do not unpack your [expletive] . . if I have to [expletive] you up myself, you're leaving this block."  *See id.* at 6.  At approximately 3:15 p.m., plaintiff was summoned to the Captain's office for an interview with Martuscello and Shanley.  *See id.* 6.  Plaintiff told defendants about his most recent encounter with Dahkle and expressed his fear of retaliation.  *See* Am. Compl. at 6.  Martuscello and Shanley "laugh[ed] at [plaintiff]."  *See id.* at 6-7.

On May 14, 2016, plaintiff was housed in the A-3 housing unit.  *See* Am. Compl. at 7. When plaintiff left his cell for callouts, recreation, or meals, he came into contact with Dahkle, who worked the "3 to 7 pm" shift in A-2.  *See id.*  Dahkle continued to verbally sexually harass plaintiff in the presence of other inmates and officers.  *See id.*  Plaintiff wrote to Martuscello, Shanley, and Phyllis Harrison-Ross, M.D. ("Harrison-Ross"), the Commissioner of the New York State Commission of Correction[5].  *See id*.

On May 15, 2016, Hoffman issued a misbehavior report charging plaintiff with creating a disturbance, failing to follow a direct order, harassment, lying, and threats.  *See* Am. Compl. at 7; Dkt. No. 8-1 at 4.  Hoffman reported that on May 15, 2016, at approximately 6:31 p.m., he:

---

[5]        Harrison-Ross is not a defendant herein.

4

. . . heard yelling on the tier. I started to make a round and could overhear inmate Hayes in A-31 cell. Yelling [sic] out his cell window to another inmate saying, "yo all you gotta do is call that PREA Hotline and say the C.O. touched your [expletive] doing a frisk or something, doesn't matter what you say. Just make something up, trust me, it works all the time." I then approached his cell door and gave him a direct order to stop yelling out of his window to which he replied "I wasn't." I then told him that I'd been listening to his conversation and gave him a second direct order to stop yelling, to which he replied "man, [expletive], I will put you [expletive] on paper too." Inmate Hayes then sat on his bed with no further incident. Area supervisor notified.

Dkt. No. 8-1 at 4.

On May 16, 2016, plaintiff was transferred to F-3-36 cell and placed in keeplock confinement pending a disciplinary hearing related to the misbehavior report. *See* Am. Compl. at 8. At approximately 4:30 p.m., Meier came to plaintiff's cell and asked plaintiff why he was in keeplock. *See id.* Plaintiff explained that Hoffman issued a retaliatory misbehavior report. *See id.* Meier called plaintiff a "[expletive] liar" and told him to "lock in." *See id.* At approximately 5:30 p.m., plaintiff was directed to the front of the company for a keeplock admission interview. *See* Am. Compl. at 8. A registered nurse asked plaintiff, in Meier's presence, whether plaintiff was sexually abused at Coxsackie C.F. and plaintiff responded "yes." *See id.* at 9. Meier became agitated and threatened plaintiff while yelling expletives and slurs at plaintiff. *See id.* The nurse asked if any sexual incident occurred within the last forty-eight hours and plaintiff responded, "no." *See id.* The nurse "cleared" plaintiff and left. *See* Am. Compl. at 9.

After the nurse left, Meier opened "the cage" and "stormed in, jumping in [plaintiff's] face." *See* Am. Compl. 9. Meier threatened plaintiff with bodily harm and was so agitated

5

that he spit on plaintiff's face. *See id.* Meier accused plaintiff of "get[ting] C.O.'s fired." *See* Am. Compl. at 9. Plaintiff complied with Meier's order to "lock in." *See id.* at 10. Approximately thirty minutes later, plaintiff kicked his cell door to get the attention of the supervising officer. *See id.* Plaintiff asked to speak to a sergeant but his request was denied. *See id.* As a result of the incident, Meier issued a misbehavior report. *See* Am. Compl. at 10. On May 17, 2016, plaintiff was escorted to the Special Housing Unit ("SHU"). *See id.*

On May 19, 2016, plaintiff received a memorandum from R. Paquette-Monthie ("Paquette-Monthie"), LMSW-Counselor regarding his "concerns."[6] *See* Dkt. No. 8-1 at 13. Paquette-Monthie informed plaintiff that she communicated plaintiff's concerns to the Superintendent and the "SORC."[7] *See id.* Paquette-Monthie told plaintiff that Martuscello was "looking into" the complaints and advised that "it is being handled." *See id.* The counselor urged plaintiff to stop filing tickets and to use his SHU time, away from the offending individual, to "relax" or he will "end up with a lot of SHU time." *See id.*

On May 23, 2016, while Martuscello and Shanley were making rounds in the SHU, plaintiff expressed his concerns regarding his safety and Meier's threats. *See* Am. Compl. at 10. Defendants "laughed and joked" and told plaintiff to address the issue during his disciplinary hearing. *See id.* at 10-11.

On May 24, 2016, plaintiff attended his Tier III disciplinary hearing related to Meier's misbehavior report. *See* Am. Compl. at 11. Plaintiff was found "not guilty" of threats and

---

[6]    Paquette-Monthie is not a defendant herein.

[7]    SORC is an abbreviation for the Supervising Offender Rehabilitation Coordinator. *See* http://www.doccs.ny.gov  (last visited Jan. 26, 2017).

violent conduct but guilty of disobeying a direct order and creating a disturbance.  *See id.*

On May 24, 2016, plaintiff received a letter from Harrison-Ross, dated May 17, 2016, that advised plaintiff that his complaints regarding retaliation at Coxsackie C.F.  and accusations that Martuscello and Shanley failed to protect plaintiff, were referred to the Office of Special Investigations for review.  *See* Am. Compl. at 11; Dkt. No. 8-1 at 2.

On June 10, 2016, plaintiff was released from the SHU.  *See* Am. Compl. at 12. Plaintiff was advised that he would no longer be employed as a messhall worker.  *See id.* Plaintiff subsequently filed a grievance (CX-19054-016) for having his program revoked.[8] *See id.*

On June 11, 2016, plaintiff was summoned to the Captain's office for an interview with Martuscello and Shanley.  *See* Am. Compl. at 13.  When plaintiff arrived, Martuscello yelled at plaintiff about his complaints and stated that "anything can happen" to plaintiff.  *See id.* Martuscello threatened to return plaintiff to the SHU if he continued to complain.  *See id.*

On June 15, 2016, plaintiff filed a formal complaint regarding his meeting with Martuscello and Shanley.  *See* Am. Compl. at 13; Dkt. No. 8-1 at 17.  On June 20, 2016, plaintiff was transferred to B-2, Division 6 cell.  *See* Am. Compl. at 14.  Hoffman was waiting for plaintiff in the gallery and threatened plaintiff.  *See id.*  Hoffman told plaintiff not to get "comfortable" because "you mess with one of us (C.O.'s) you got to deal with all of us."  *See id.*  On June 17, 2016, plaintiff filed a grievance (CX 18983-016) related to the retaliatory conduct and harassment by Hoffman and Meier.  *See* Am. Compl. at 12; Dkt. No. 1-1 at 2.

On June 24, 2016, plaintiff filed a petition pursuant to New York Civil Service Law § 75

---

[8]     This grievance was filed on July 25, 2016.  See Dkt. No. 1-1 at 2.

7

charging Dahkle and Hoffman with, *inter alia*, threats of physical abuse and harassment. *See* Am. Compl. at 14; Dkt. No. 8-1 at 20. Plaintiff served a copy upon the Acting DOCCS Commissioner, the Office of Special Investigation, and Martuscello. *See* Am. Compl. at 14.

On June 29, 2016, plaintiff received a letter from Karen Bellamy ("Bellamy")[9] in response to plaintiff's June 15, 2016 correspondence to Acting DOCCS Commissioner Anthony Annucci. *See* Dkt. No. 8-1 at 16. Plaintiff was advised that his grievance, CX-18983-16, alleging retaliation, was pending with the Superintendent.[10] *See id.* A copy of the letter was sent to Martuscello. *See id.*

On July 5, 2016, plaintiff received a letter from Deputy Counsel Nancy Heywood regarding his Civil Service petition. *See* Dkt. No. 8-1 at 30. Plaintiff was advised that the New York Civil Service Law did not authorize an inmate to initiate disciplinary proceedings against a DOCCS employee. *See id.* Plaintiff was advised to direct his complaints to the Inmate Grievance Office at his facility. *See id.*

On July 7, 2016, plaintiff was summoned to the Inmate Grievance Office. *See* Am. Compl. at 14. Iarrusso advised that "some higher-up official in Albany" was investigating plaintiff's grievances and complaints against Dahkle. *See id.* Plaintiff discussed the events that had transpired between February 26, 2016 until July 7, 2016. *See id.* Iarrusso advised plaintiff that if he ceased filing complaints, "all of this would go away." *See* Am. Compl. at 15. Thirty minutes later, Hoffman banged on plaintiff's cell door and continued to harass plaintiff

---

[9]      Bellamy is not a defendant herein.

[10]      On August 1, 2016 and August 11, 2016, plaintiff received a second and third letter from Bellamy advising that CX-18983-16 was still pending with the Superintendent. *See* Dkt. No. 8-1 at 10-11. Copies of the aforementioned letters were forwarded to Martuscello. *See id.*

for filing grievances. *See id.* He also told plaintiff that "Dahkle said hi." *See id.*

On July 12, 2016, plaintiff was summoned to the Inmate Grievance Office for a hearing regarding his complaints about SHU mail. *See* Am. Compl. at 15. The hearing was conducted by Iarrusso and Meier. See Am. Compl. at 15. Plaintiff claimed that his grievances about Martuscello and Shanley had not been filed despite the fact that he wrote the grievances one month prior. *See id.* at 15-16. Iarrusso angrily responded, "I don't care about your grievance" and admitted that he destroyed the grievance. *See id.* at 16.

On July 13, 2016, plaintiff filed a complaint against Iarrusso with Bellamy and requested an investigation into his claims of misconduct and retaliation. *See* Am. Compl. at 16. The complaint was received on July 27, 2016. *See* Dkt. No. 8-1 at 32-34.

On July 18, 2016, plaintiff filed a grievance (CX-19053-016) charging Iarrusso with misconduct and retaliation.[11] *See* Am. Compl. at 16. On August 16, 2016, a hearing was held related to the grievance. *See* Dkt. No. 8-1 at 35. The IGRC issued a response indicating that they were "deadlocked" but the committee noted that Iarrusso admitted that he destroyed plaintiff's grievance and conceded that he made statements to the effect that he would not file grievances against the Superintendent. *See id.* On September 17, 2016, Martuscello issued a decision accepting plaintiff's grievance, "in part." *See id.* at 36.

On July 30, 2016, plaintiff was escorted to Unit F-3, for keeplock confinement due to another misbehavior report. *See* Am. Compl. at 17. Meier opened the door and called plaintiff a derogatory name. *See id.* Plaintiff was directed to enter the block and go to his cell. *See id.* As plaintiff walked towards his cell, with his hands in his pocket, Meier "bear

---

[11] Documentation related to this grievance indicates that it was filed on July 25, 2016. See Dkt. No. 8-1 at 36.

hugged" him from behind.  *See id.*  Meier locked plaintiff's arms at his waist, lifted him into

the air, and slammed him onto the floor.  *See* Am. Compl. at 17.  Plaintiff was semi-

conscious and dazed.  *See id.*  Meier jumped onto plaintiff's back and repeatedly punched

plaintiff, with closed fists, in his back, head, face, and neck.  See Am. Compl. at 17.  Langtry

ran over and repeatedly stomped on plaintiff's head.  *See id.*  The response team, including

Bence and Coon, arrived and plaintiff was beaten, kicked, and punched.  *See id.*  Plaintiff's

hands were cuffed behind his back during the assault.  *See id.*  Meier twisted plaintiff's wrists

and threatened to break them.  *See* Am. Compl. at 18.  Plaintiff was lifted in the air, by the

handcuffs, and thrown into the wall.  *See id.*  Plaintiff's face and body "bounced" off of the

concrete wall.  *See id.*  Meier grabbed the back of plaintiff's head, holding tightly to plaintiff's

dreadlocks, and slammed plaintiff's face into the wall.  *See id.*  Meier told plaintiff to stay on

the wall.  See Am. Compl. at 18.  Plaintiff's head was bleeding and "split open."  *See id.*

Langtry, Coon, and Bence continued to assault plaintiff using their knees to "pound" plaintiff's

legs and thighs.  *See id.*  Defendants also punched plaintiff in his arms, back and ribs.  *See

id.*

Plaintiff was escorted to the medical unit and transported to Albany Medical Center for

treatment.  *See* Am. Compl. at 18.  On August 9, 2016, Plaintiff filed a grievance (CX-19094-

16) related to the incident.  *See id*; Dkt. No. 1-1 at 2.

On August 12, 2016, Bellamy acknowledged receipt of a complaint involving the

assault.  *See* Dkt. No. 8-1 at 41.  The complaint was assigned grievance number, CX-19094-

16, and plaintiff was advised that the grievance was pending with the Superintendent.  *See

id.*  A copy of Bellamy's letter was sent to Martuscello.  *See id.*  In a second letter, also dated

August 12, 2016, Bellamy advised that CX-19053-16 and CX-19054-16 regarding the grievance process and plaintiff's "program change" were pending for IGRC hearings. *See* Dkt. No. 8-1 at 8.

Construed liberally, the amended complaint contains the following: (1) Eighth Amendment claims related to sexual assault and/or abuse against Dahkle; (2) Eighth Amendment excessive force claims against Meier, Langtry, Bence, and Coon; (3) retaliation claims against Dahkle, Hoffman, Meier, Langtry, Bence, Coon, Iarrusso, and Martuscello; (4) claim that Iarrusso violated DOCCS Directives when he discarded plaintiff's grievance; and (5) supervisory claims against Martuscello and Shanley. *See* Am. Compl, *generally*.

## IV. ANALYSIS

### A. Previous Claims

As a result of the review of the original complaint, the Court held that the following claims required a response: (1) retaliation claims against Hoffman related to the misbehavior report; and (2) retaliation claims against Meier, Langtry, Bence, and Coon related to the use of excessive force. These claims are repeated and realleged in the amended complaint and thus, survive review as well.

### B. Eighth Amendment Claims

The law related to the Eighth Amendment was discussed in the December Order and will not be restated herein. *See* Dkt. No. 5 at 9-13.

#### 1. Sexual Harassment/Abuse

In the December Order, the Court dismissed plaintiff's Eighth Amendment claim against Dahkle holding:

11

> Here, plaintiff complains of one instance of verbal sexual
> harassment by Dahkle. *See* Compl. at 6. Plaintiff does not
> provide any specific facts related to the incident and does not
> contend that he was touched or physically harmed in any
> manner. As discussed *supra*, allegations of verbal harassment
> are insufficient to support a 1983 claim.

Dkt. No. 5 at 11.

In the amended complaint, plaintiff asserts new facts related to the April 15, 2016

incident with Dahkle and contends that the sexual assault occurred during a pat frisk. *See*

Am. Compl. at 4. "In determining whether an Eighth Amendment violation has occurred, the

principal inquiry is whether the contact is incidental to legitimate official duties, such as a

justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify

the officer or humiliate the inmate." *Crawford v. Cuomo*, 796 F.3d 252, 257–58 (2d Cir.

2015). Here, plaintiff claims that the search was conducted to humiliate and intimidate him.

*See* Am. Compl. at 4. Plaintiff alleges that Dahkle questioned plaintiff's "gender identity" and

made sexually explicit statements regarding plaintiff's sexual preferences. *See id.* at 4-5.

At this juncture, the Court finds that plaintiff's Eighth Amendment claim against Dahkle

survives sua sponte review and requires a responsive pleading. *See Allah v. Morrison*, No.

14-CV-6735, 2016 WL 4017340, at *3-4 (W.D.N.Y. July 22, 2016) (holding that alleged

taunts including, "you know what I want" suggest that the defendant's conduct was "designed

to humiliate [the plaintiff], gratify herself, or both."). In so ruling, the Court expresses no

opinion as to whether plaintiff's claims can withstand a properly filed motion to dismiss or for

summary judgment.

### 2. Excessive Force

In the December Order, the Court dismissed plaintiff's Eighth Amendment excessive

force claims against Meier, Langtry, Bence, and Coon holding:

> Here, plaintiff summarily states that Meier, Langtry, Bence, and Coon "subjected [him] to assault and battery." *See* Compl. at 8. Plaintiff has failed to provide any further facts or information with regard to the use of force. While plaintiff claims that he was hospitalized and received stitches as a result of the altercation, *see* Compl. at 8, the vague allegations in the complaint do not plausibly suggest that defendants attacked plaintiff with malice. *See Green v. McLaughlin*, 480 F. App'x 44, 49 (2d Cir. 2012) (reasoning that while the plaintiff characterized the encounter as an "attack", he failed to allege facts support the inference that the defendants were malicious or sadistic). Consequently, plaintiff's excessive force claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

Dkt. No. 5 at 12-13.

In the amended complaint, plaintiff identifies the individuals involved in the assaults, the time, date, location of the incidents, and describes the injuries allegedly sustained as a result of the incidents. *See* Am. Compl. at 17-18. Plaintiff also alleges facts suggesting that the use of force was "malicious and sadistic." *See id.* Accordingly, the Court finds that plaintiff's Eighth Amendment claims against Meier, Langtry, Bence, and Coon survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

### C.    Retaliation

The law related to First Amendment retaliation claims was discussed in the December Order and will not be restated herein. *See* Dkt. No. 5 at 13-14. In the amended complaint, plaintiff reasserts his original retaliation claims against Dahkle, Hoffman, Meier, Langtry, Bence, and Coon and asserts new retaliation claims against Dahkle, Hoffman, Meier, and

Iarrusso.

**1. Dahkle**

In the December Order, the Court dismissed plaintiff's retaliation claims against

Dahkle and reasoned:

> Plaintiff claims that Dahkle sexually harassed him in retaliation for plaintiff's grievances against him. *See* Compl. at 6. Verbal threats may constitute adverse action for purpose of a First Amendment retaliation if the threat is sufficiently specific. *See Ford v. Palmer*, 539 F. App'x 5 (2d Cir. 2013) (summary order) (finding that a verbal threat constituted adverse action where corrections officer threatened to poison the plaintiff in retaliation for filing his grievances). Here, the complaint lacks specific facts related to the context in which the threat was made, the substance of the threat, and how many times plaintiff was threatened. As presently plead, plaintiff has not sufficiently plead that he suffered any adverse action to support a plausible retaliation claim against Dahkle.

Dkt. No. 5 at 14-15.

In the amended complaint, plaintiff alleges that Dahkle sexually assaulted him on April

15, 2016 in retaliation for filing a grievance against him related to plaintiff's dreadlocks. *See*

Am. Compl. at 4. As presently plead, the amended complaint does not contain information

suggesting that Dahkle was personally involved with plaintiff's March 2016 grievance related

to his dreadlocks. The amended complaint lacks facts suggesting that Dahkle was even

aware of this grievance. *See Faulk v. Fischer,* 545 F. App'x 56, 59 (2d Cir. 2013) (holding

that the plaintiff failed to produce evidence suggesting that the defendants were "motivated

by, or even aware of," his grievance); *see also Davidson v. Talbot*, No. 01-CV-473 (RFT),

2005 WL 928620, at *16 (N.D.N.Y. March 31, 2005) (finding that the plaintiff's allegation that

he was attacked for filing grievances failed to allege when the grievances were filed and thus,

"th[e] Court had no way of assessing the strength or validity of such claim."); *see Guillory v.*

14

*Haywood*, No. 13-CV-1564 (MAD/TWD), 2015 WL 268933, at *23 (N.D.N.Y. Jan. 21, 2015) (concluding that the plaintiff failed to allege facts identifying the grievances and lawsuits from which the defendant's awareness could be inferred). As plaintiff has not sufficiently alleged a causal connection between any protected activity and retaliatory conduct, plaintiff has not stated a plausible claim for retaliation against Dahkle in violation of the First Amendment, related to the April 2016 incident, and this claim is dismissed.

A different conclusion is reached however, with respect to plaintiff's retaliation claim against Dahkle related to threats. Plaintiff claims that Dahkle threatened him on May 9, 2016 in retaliation for filing a grievance related to the April 15, 2016 incident. *See* Am. Compl. at 5-6. "[S]ome verbal threats, even if not serious enough to implicate the Eighth Amendment, can constitute an adverse action." *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010); *Barrington v. New York*, 806 F.Supp.2d 730, 746 (S.D.N.Y.2011) (holding that verbal threats may constitute adverse action for purpose of a First Amendment retaliation if the threat is sufficiently specific). Whether threats constitute adverse action in a particular case is dependent upon the specificity of the threat and the context in which it was made. *Compare Hepworth v. Suffolk Cnty*., No. 02-CV-6473, 2006 WL 2844408, at *8-9 (E.D.N.Y. Sept. 29, 2006) (numerous verbal threats that inmate "would receive another beating or be killed" was enough evidence that a "reasonable jury could find that the officers unconstitutionally retaliated against" inmate) *with Bartley v. Collins*, No. 05-CV-10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (threats such as "we are going to get you, you better drop the suit," do not rise to the level of adverse action). At this juncture, the Court finds that plaintiff has sufficiently alleged a retaliation claim against Dahkle, based upon the

threats in May 2016, to require a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Meier, Hoffman, and Martuscello

Plaintiff alleges that Meier and Hoffman threatened him on May 16, 2016, June 20, 2016, and July 7, 2016 in retaliation for plaintiff's April 19, 2016 grievance against Dahkle. *See* Am. Compl. at 14. For the reasons set forth in Part IV(C)(1), *supra*, plaintiff's retaliation claims against Meier and Hoffman survive initial review and requires a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

Plaintiff also claims that during his June 11, 2016 interview, Martuscello threatened him in retaliation for filing grievances and stated, "if [you] continue to complain, anything can happen to [you]." *See* Am. Compl. at 13. Martuscello threatened to return plaintiff to the SHU if he continued to complain. *See* Am. Compl. at 13. Plaintiff's retaliation claim against Martuscello survives initial review and requires a response. *See Hill v. Laird*, No. 06-CV-0126, 2014 WL 1315226, at *8 (E.D.N.Y. Mar. 31, 2014) (holding that the threat to file false disciplinary reports to keep the plaintiff in the SHU, may constitute an adverse action). In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

### 3. Iarrusso

Plaintiff claims that Iarrusso retaliated against him when he discarded his grievance against Martuscello and Shanley. *See* Am. Compl. at 15-16. "[T]he intentional destruction of

grievances is sufficient to allege a claim of retaliation." *Brown v. Bascomb*, No.

9:05-CV-1466 (NAM), 2008 WL 4283367, at *6 (N.D.N.Y. Sept. 16, 2008) (citing *Soto v.

Lacavino*, No. 01-CV-5850, 2003 WL 2128172 at *2 (S.D.N.Y. June 04, 2003)).  Accordingly,

plaintiff has asserted a potential retaliation claim cognizable under § 1983 against Iarrusso.

In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly

filed motion to dismiss or for summary judgment.

### D.    Violation of DOCCS Directive

A Section 1983 claim brought in federal court is not the appropriate forum to raise

violations of prison regulations.  *See Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665,

*6 (S.D.N.Y. Mar. 15, 2001) (holding that the failure to follow a New York State DOCCS

Directive or prison regulation does not give rise to a federal constitutional claim).  The failure

to follow a DOCCS Directive does not give rise to a § 1983 claim.  *See Sanders v. Gifford*,

No. 11-CV-0326 (LEK/RFT), 2014 WL 5662775, at *4 (N.D.N.Y. Nov. 4, 2014).  This claim is

dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to

state a claim upon which relief may be granted.[12]  *See McAllister v. Call*, No. 10-CV-610

(FJS/CFH), 2014 WL 5475293, at *11 (N.D.N.Y. Oct. 29, 2014) ("A section 1983 claim is not

the appropriate forum in which to seek review of a violation of unspecified DOCCS rules,

regulations and procedures.").

### E.    Supervisory Claims

The law related to personal involvement and supervisory officials was discussed in the

---

[12]    The amended complaint also includes a claim that Iarrusso violated his constitutional rights when he discarded plaintiff's grievance.  *See* Am. Compl. at 16.  In the December Order, the Court dismissed this claim holding that, "[p]laintiff does not have a constitutional right to file a grievance."  *See* Dkt. No. 5 at 16.

December Order and will not be restated herein.  *See* Dkt. No. 5 at 16-17.  In the December

Order, the Court dismissed plaintiff's supervisory claims against Martuscello and Shanley

holding:

> . . . plaintiff has failed to establish that Martuscello and Shanley
> were personally involved in any constitutional deprivation.
> Plaintiff claims that he "repeatedly notified" Shanley and
> Martuscello that he was being sexually harassed.  *See* Compl.
> at 8.  While plaintiff refers generally to "notifications," plaintiff
> failed to plead any facts establishing when he notified
> defendants, where he sent his notification, by what means his
> notifications were forwarded or what response he received.
> Without more, the allegations are not enough to allege
> personal involvement in any constitutional deprivation.  *See*
> *Bridgewater*, 698 F.Supp.2d at 359; *Guillory v. Cuomo*, 616 F.
> App'x 12, 14 (2d Cir. 2015) (summary order).

Dkt. No. 5 at 18-19.

In the amended complaint, plaintiff supports his claim that Martuscello and Shanley

were personally involved in the alleged constitutional violations with facts including the dates

and times that he spoke to defendants, either during rounds or interviews.  *See* Am. Compl.

at 5-7; 10-11, 13.  Plaintiff also annexed copies of documentation suggesting that

Martuscello and Shanley were aware of the alleged unconstitutional conduct.  *See* Dkt. No.

8-1 at 13, 28, 36, 41.  At this juncture, the Court finds that plaintiff's supervisory claims

against Martuscello and Shanley survive sua sponte review and require a response.  *See*

*Lewis v. Wallace*, No. 9:11-CV-0867(DNH/DEP), 2013 WL 1566557, at *5 (N.D.N.Y. Feb. 22,

2013) (collecting cases) *report and recommendation adopted*, No. 9:11-CV-0867(DNH/DEP),

2013 WL 1566555 (N.D.N.Y. Apr. 12, 2013) ("[C]ourts in this Circuit have held that personal

involvement may be found where a supervisor receives, reviews, and responds to a plaintiff's

grievance.").  In so ruling, the Court expresses no opinion as to whether this claim can

withstand a properly filed motion to dismiss or for summary judgment.

**V.     CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED**, that the amended complaint (Dkt. No. 8), and all exhibits annexed (Dkt. Nos.1-1 and 8-1) thereto is accepted for filing and is deemed the operative pleading; and it is further

**ORDERED** that the Clerk of the Court is directed to create a new docket entry for the amended complaint; and it is further

**ORDERED** that the Clerk of the Court shall amend the docket to include Dahkle, Martuscello, Shanley and Iarrusso as defendants herein; and it is further

**ORDERED** that the following claims are **DISMISSED** pursuant to U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) plaintiff's retaliation claim against Dahkle related to the alleged sexual assault in April 2016; and (2) plaintiff's claim that Iarrusso violated his constitutional rights when he failed to follow DOCCS Directives; and it is further

**ORDERED,** that the following claims survive this Court's initial review and require a response: (1) Eighth Amendment claims against Dahkle related to the April 15, 2016 incident; (2) Eighth Amendment excessive force claims against Meier, Bence, Coon, and Langtry; (3) First Amendment retaliation claims against Dahkle, Hoffman, Meier, Bence, Coon, Langtry, Iarrusso, and Martuscello; and (4) supervisory claims against Martuscello and Shanley; and it is further

**ORDERED**, that a response to the amended complaint be filed by defendants

19

Hoffman, Meier, Bence, and Coon or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

ORDERED, that the Clerk shall issue summonses for remaining defendants, Dahkle, Iarrusso, Martuscello, Langtry, and Shanley and forward them, along with copies of the amended complaint, to the United States Marshal for service upon the defendants. The Clerk shall forward a copy of the summonses and amended complaint to the Office of the New York Attorney General, together with a copy of this Decision and Order; and it is further

ORDERED, that a response to the amended complaint be filed by defendants as provided for in the Federal Rules of Civil Procedure; and it is further

ORDERED, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

**ORDERED** that the Clerk serve a copy of this Decision and Order on Plaintiff.


SO ORDERED.

Dated: January 26, 2017

Thomas J. McAvoy
Senior, U.S. District Judge