**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

TAHEEN HAYES,

                              Plaintiff,


              v.                                                        No. 9:16-CV-1368
                                                                         (TJM/CFH)
T. DAHKLE, et al.,

                              Defendants.

_____

**APPEARANCES:**                           **OF COUNSEL:**

Taheen Hayes
05-A-3850
Wende Correctional Facility
P.O. Box 1187
Alden, New York 14004
Plaintiff pro se

Hon. Eric T. Schneiderman                  HELENA O. PEDERSON, ESQ.
Attorney General for the                   Assistant Attorney General
   State of New York
The Capitol
Albany, New York 12224
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

        Plaintiff pro se Taheen Hayes ("plaintiff"), an inmate who was, at all relevant times,

in the custody of the New York Department of Corrections and Community Supervision

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants,

_____

        [1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to
28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Corrections Officer ("C.O.") Timothy Dahkle, C.O. Jason Meier, C.O. Stephen Bence, C.O. Edward Coon, C.O. Kristopher Hoffman, Officer Rehabilitation Counselor ("O.R.C.") James Iarusso, Deputy Superintendent of Security ("DSS") Raymond Shanley, and Superintendent ("Supt.") Daniel Martuscello – who, at all relevant times, were employed at Coxsackie Correctional Facility ("Coxsackie") – violated his constitutional rights under the First and Eighth Amendments.  Dkt. No. 12 ("Am. Compl.").  Presently pending before the Court is defendants' Motion to Dismiss in part pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(c).  Dkt. No. 26-1.  Plaintiff filed a response in opposition to the motion, and defendants filed a reply.  Dkt. Nos. 30, 31.  For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

## I. Background

The facts are related herein in the light most favorable to plaintiff as the nonmoving party.  See subsection II infra.  Plaintiff alleges that on April 15, 2016, C.O. Dahkle sexually assaulted him during a pat-frisk.  Am. Compl. ¶¶ 1-4.  While conducting the frisk, C.O. Dahkle "had his lower body (genitals) pressed up against [plaintiff's] butt" and tightly pressed his hands down plaintiff's back and "into the crack of his butt (inside) all the way down and around [his] [groin]." Id. ¶ 4.  While doing so, C.O. Dahkle asked, "[d]o you consider yourself a male or female?" and "[d]o you suck dick or fuck men?"  Id. ¶ 6.  On April 16, 2016, plaintiff reported the incident to the Prison Rape Elimination Act ("PREA") hotline.  Id. ¶ 7.  On April 17, 2016, plaintiff again reported the incident to the PREA hotline and filed a grievance with Coxsackie.  Id. ¶¶ 8-9.  The next day, plaintiff reported the

2

alleged sexual assault to Supt. Martuscello, who told plaintiff that someone would contact him about the incident.  Id. ¶ 11.  Plaintiff was then interviewed by the Office of Mental Health and the Coxsackie Medical Staff.  Id. ¶ 12.

Plaintiff alleges that C.O. Dahkle verbally harassed him on at least one other occasion; on May 9, 2016, C.O. Dahkle stated, "how much dick did you suck to come back over here" and "do not unpack your shit faggot, if I have to fuck you up myself you're leaving this block."  Am. Compl. ¶ 13.  Later that day, Supt. Martuscello and DSS Shanley met with plaintiff to discuss a letter plaintiff sent to Supt. Martuscello concerning plaintiff's safety at Coxsackie.  Id. ¶ 14.  During the meeting, plaintiff informed Supt. Martuscello and DSS Shanley about C.O. Dahkle's harassment.  Id.  Supt. Martuscello and DSS Shanley laughed at plaintiff, and DSS Shanley stated, "what do you want me to do?  I can't fire him for threatening to fuck you up."  Id. ¶ 15.  Plaintiff also informed Supt. Martuscello and DSS Shanley about comments and harassment he received from other Coxsackie correction officers in response to his filing a grievance against C.O. Dahkle.  Id.  Supt. Martuscello told him he was paranoid.  Id.  Supt. Martuscello ordered plaintiff placed on "investigation status" pending an interview with the Office of Special Investigation.  Id.  On or about May 12, 2016, plaintiff reported C.O. Dahkle's sexual assault and threats, as well as Supt. Martuscello and DSS Shanley's failure to protect him or intervene, to the Office of Special Investigation.  Id. ¶ 16.

After plaintiff spoke with the Office of Special Investigation, C.O. Dahkle continued to make "inflammatory, derogatory and degrading statements" to plaintiff about his hair, clothes, and sexual orientation, and called plaintiff a snitch.  Am. Compl. ¶ 17.  Plaintiff

reported these comments to Supt. Martuscello, DSS Shanley, the Office of Mental Health, and Coxsackie medical staff.  Id. ¶ 18.

On May 15, 2016, C.O. Hoffman "falsified a misbehavior report which subjected [plaintiff] to confinement for retaliation . . . because [plaintiff] filed a sexual assault complaint against T. Dahkle and was rumored by Coxsackie Correctional Officers to be working with the Office of Special Investigation."  Am. Compl. ¶¶ 19, 20.  The following day, plaintiff was placed in keeplock[2] pending a disciplinary hearing for C.O. Hoffman's misbehavior report.  Id. ¶ 20.

On May 16, 2016, plaintiff met with C.O. Meier and non-party C.O. Rowe.  Am. Compl. ¶ 21.  When asked why he was keeplocked, plaintiff explained C.O. Hoffman's alleged retaliatory misbehavior report.  Id.  C.O. Meier called plaintiff a "fucking liar" and stated that he heard plaintiff telling other inmates to call the PREA hotline and falsely report incidents of sexual abuse.  Id.  Plaintiff assured C.O. Meier that he was mistaken, and C.O. Meier became "very upset" and agitated and ordered plaintiff back to his cell.  Id. ¶¶ 21, 22.  Later that day, plaintiff attended his keeplock admission interview with a non-party nurse while in the presence of C.O. Meier and C.O. Rowe.  Id. ¶ 23.  The nurse asked plaintiff if he had been sexually abused while in Coxsackie.  Id. ¶ 24.  When plaintiff answered affirmatively, C.O. Meier "went crazy," yelling, "faggots like you get C.O.'s [sic] fucking fired.  You want to play these fucking games?"  Id.  C.O. Meier pointed his fingers directly in plaintiff's face and threatened to "fuck [plaintiff] up right now."  Id. ¶¶ 26, 27.

---

[2] "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities."  Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. COMP. CODES R. & REGS. tit. 7, § 301.6.

On May 17, 2016, plaintiff was transferred to the Secured Housing Unit ("SHU").[3] Am. Compl. ¶ 30.  On May 23, 2016, plaintiff again expressed his fear and frustrations about his safety to Supt. Martuscello and DSS Shanley, showing them the allegedly false May 15, 2016 misbehavior report from C.O. Hoffman and explaining C.O. Meier's threats. Id. ¶ 32.  Supt. Martuscello and DSS Shanley told plaintiff to resolve his problems at an upcoming disciplinary hearing.  Id.

On May 26, 2016, plaintiff filed a grievance for the "constant retaliatory practices by way of disciplinary action and harrasment [sic] from C.O. Hoffman, threats from C.O. Meier for filing grievances and a sexual complaint on Dahkle."  Am. Compl. ¶ 36.  In this grievance, plaintiff also "raise[d] the issue of the failure to protect" and how he feared for his life.  Id.  Plaintiff sent a copy of this grievance to Supt. Martuscello.  Id.  On June 10, 2016, plaintiff was released from SHU.  Id. ¶ 37.  When plaintiff asked his O.R.C. Counselor why a disciplinary hearing for C.O. Hoffman's misbehavior report had never been conducted, the Counselor told him that the misbehavior report did not exist.  Id.

On June 11, 2016, Supt. Martuscello and DSS Shanley ordered plaintiff to the Captain's office.  Am. Compl. ¶ 39.  Supt. Martuscello yelled at plaintiff for filing complaints about the alleged sexual assault and other harassment to outside New York State agencies.  Id.  DSS Shanley warned plaintiff that because he was the Deputy Director of Security, if plaintiff initiated any further complaints, "anything [could] happen to [him]" for

---

[3] SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

"security reasons." Id.  Supt. Martuscello threatened that if plaintiff continued to "make an issue," he would place him back in SHU.  Id. ¶ 41.  Four days later, plaintiff filed a grievance regarding this meeting.  Id. ¶ 42.  Plaintiff also filed a complaint with non-party Anthony J. Annucci, the acting Commissioner of DOCCS, regarding the sexual abuse, threats, harassment, and retaliatory practices he experienced at Coxsackie.  Id.

On June 20, 2016, plaintiff was transferred to a different housing unit.  Am. Compl. ¶ 43.  Upon arrival, C.O. Hoffman stated, "[d]on't get comfortable Hayes, you'll be out of here soon."  Id.  C.O. Hoffman further stated, "you mess with one of us (C.O.'s) you got to deal with all of us."  Id.  On July 7, 2016, C.O. Hoffman banged on plaintiff's cell, and told him that the May 15, 2016 misbehavior report he filed against plaintiff "don't [sic] exist" and that "Dahkle said hi."  Id. ¶ 47.

On July 30, 2016, C.O. Meier attacked plaintiff from behind and slammed him into the ground.  Am. Compl. ¶ 55.  C.O. Meier then sat on plaintiff's back and repeatedly punched him in the back, head, and face with closed fists.  Id. ¶ 56.  C.O. Langtry, C.O. Bence, and C.O. Coon joined in, kicking and punching plaintiff all over his body as he lay handcuffed on the floor.  Id. ¶ 57.

## II. Legal Standard

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw, 448 F.3d 518, 521 (2d Cir. 2006) (citing Karedes v. Ackerley Grp., Inc., 423 F.3d 107, 113 (2d Cir. 2005)).  The Court is required to "accept[ ] as true the

complaint's factual allegations and draw[ ] all inferences in the plaintiff's favor." Id.
However, this "tenet . . . is inapplicable to legal conclusions [;thus, t]hreadbare recitals of
the elements of a cause of action, supported by mere conclusory statements, do not
suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly,
550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and
conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts
are not bound to accept as true a legal conclusion couched as a factual allegation.")).

To defeat a motion to dismiss or a motion for judgment on the pleadings, a claim
must include "facial plausibility . . . that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing
Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a
probability requirement  . . . it simply calls for enough fact to raise a reasonable expectation
that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585
F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough
facts to state a claim to relief that is plausible . . . .") (citations omitted).

Still, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain
statement of the claim showing that the pleader is entitled to relief,' in order to 'give the
defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"
Twombly, 550 U.S. at 555 (citations omitted).  Although a complaint attacked under the
standard set forth in Rule 12(b)(6) does not require detailed factual allegations, "a plaintiff's
obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a cause of action will not do."

Id. (citations omitted).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford

the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d

471, 477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se
> litigant is entitled to special solicitude, that a pro se litigant's
> submissions must be construed liberally, and that such
> submissions must be read to raise the strongest arguments
> that they suggest.  At the same time, our cases have also
> indicated that we cannot read into pro se submissions claims
> that are not consistent with the pro se litigant's allegations or
> arguments that the submissions themselves do not suggest
> that we should not excuse frivolous or vexatious filings by pro
> se litigants, and that pro se status does not exempt a party
> from compliance with relevant rules of procedural and
> substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v.

Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to

count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court

is obliged to construe his pleadings liberally.") (internal citations omitted).


### III. Discussion[4]

Defendants move to dismiss plaintiff's complaint in part on the grounds that the

following causes of action fail to state a claim upon which relief could be granted:

(1) plaintiff's Eighth Amendment sexual abuse claim against defendant C.O. Dahkle;

(2) plaintiff's First Amendment retaliation claim against defendants C.O. Dahkle, C.O.

---

[4] All unpublished opinions cited to by the Court in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Meier, C.O. Hoffman, Supt. Martuscello, DSS Shanley, C.O. Bence, C.O. Lantry, and C.O. Coon; and (3) plaintiff's supervisory liability claim against defendants Supt. Martuscello and DSS Shanley.


## A. Eighth Amendment

Plaintiff claims that defendant C.O. Dahkle sexually abused him in violation of his Eighth Amendment right "to be free from cruel and unusual punishment and sexual abuse." Am. Compl. at 20.  Defendants contend that C.O. Dahkle's conduct was not "objectively, sufficiently serious" enough to amount to an Eighth Amendment violation.  Dkt. No. 26-1 at 9.

"The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials." Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015) (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)).  To state a claim under the Eighth Amendment, a plaintiff must establish both objective and subjective elements.  Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).  First, for the subjective element, the plaintiff must allege that the defendant "acted with a subjectively 'sufficiently culpable state of mind.'" Crawford, 796 F.3d at 256 (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)).  Second, for the objective element, the plaintiff must demonstrate that the "conduct was objectively 'harmful enough' or 'sufficiently serious' to reach constitutional dimensions."  Id. (quoting Hudson, 503 U.S. at 8, 20).  "[N]ot every malevolent touch by a prison guard gives ride to a federal cause of action." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (internal citation and quotation marks omitted).  Still, the Eighth Amendment protects conduct that is "repugnant to the conscious

of mankind" – i.e., "incompatible with evolving standards of decency" or "involve the unnecessary and wanton infliction of pain." Crawford, 796 F.3d at 256 (internal citation and quotation marks omitted).

### 1. Boddie v. Schnieder and Crawford v. Cuomo

In Boddie v. Schnieder, the Second Circuit extended Eighth Amendment protection to inmates' claims of sexual abuse, concluding that, "there can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation." Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997). The Boddie Court concluded that the plaintiff failed to state an Eighth Amendment claim where a corrections officer fondled his genitals, pressed into him with "her whole body vagina against [his] penis," and called him a "sexy black devil." Id. at 860, 861-82. In reaching that conclusion, the Court determined that "[n]o single incident [the plaintiff] described was severe enough to be 'objectively, sufficiently serious'" or "cumulatively egregious in the harm they inflicted." Id. at 861 (quoting Farmer v. Brennan, 511 U.S. 825, 833-34 (1994)).

The Court later expanded on that proposition in Crawford v. Cuomo, stating that a single incident of sexual abuse may violate the Eighth Amendment if it is "sufficiently severe or serious." Crawford, 796 F.3d at 257. The Crawford Court explained:

> [t]o show that an incident or series of incidents was serious enough to implicate the Constitution, an inmate need not allege that there was penetration, physical injury, or direct contact with uncovered genitalia. A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which

10

> serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment.    Similarly, if the situation is reversed and the officer intentionally brings his or her genitalia into contact with the inmate in order to arouse or gratify the officer's sexual desire or humiliate the inmate, a violation is self-evident because there can be no penological justification for such contact.

Id.  Ultimately, in assessing whether an Eighth Amendment violation has occurred, "the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." Id. at 257-58 (citing Whitley v. Albers, 475 U.S. 312, 320 (1986) (determining that an Eighth Amendment inquiry turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.")).

Crawford involved allegations of sexual abuse made by two inmates, Thaddeus Corley and James Crawford, who alleged that on separate occasions, a corrections officer squeezed and fondled plaintiffs' genitalia, stating, "[t]hat doesn't feel like a penis to me," and "I'll run my hands up the crack of your ass if I want to." Crawford, 796 F.3d at 254, 255.    The Crawford Court held that the defendant corrections officer's conduct was "unquestionably 'repugnant to the conscience of mankind' and therefore violate[d] the Eighth Amendment." Id. at 258.    The Court concluded that there is no penological justification for "checking to see if an inmate has an erection" and that such an extensive search of the plaintiffs' genitalia was not "incident to any legitimate duties." Id.  Further, the Court held that the defendant's comments and taunts suggested that he "undertook the search in order to arouse himself, humiliate Crawford, or both." Id. at 259.

The <u>Crawford</u> Court affirmed the underlying principles set forth in <u>Boddie</u>, acknowledging that the general standard, "which condemns [the defendant's] conduct," remained the same. <u>Crawford</u>, 796 F.3d at 259. However, the Court noted that, "in determining the application of that standard, the Eighth Amendment requires courts to 'look beyond historical conceptions to the evolving standards of decency that mark the progress of a maturing society.'" <u>Id.</u> (quoting <u>Graham v. Florida</u>, 560 U.S. 48, 58 (2010)). "[C]onduct that might not have risen to the level of an Eighth Amendment violation 18 years ago" when <u>Boddie</u> was decided "may no longer accord with community standards, and for that reason may state a claim today." <u>Id.</u> The Court analyzed the "contemporary standards of decency," focusing on state and federal enactments that "criminalize sexual contact between inmates and corrections officers," including state statutes, laws, and policies aimed at preventing sexual abuse in prison, as well as PREA, "the first federal law to address the sexual abuse of prisoners." <u>Id.</u> Such legislation, the Court posited, is the "'clearest and most reliable objective evidence of contemporary values.'" <u>Id.</u> at 260 (quoting <u>Atkins v. Virginia</u>, 536 U.S. 304, 315 (2002)). Under this analysis, "the officer's conduct in <u>Boddie</u> would flunk its own test today." <u>Id.</u>

## 2. Application

Plaintiff alleges a single incident of sexual abuse. Am. Compl. ¶¶ 3-6. According to plaintiff, C.O. Dahkle conducted a pat frisk during which he pressed his "lower body (genitals) . . . against [plaintiff's] butt" and ran his hands "down [plaintiff's] back and into the crack of [his] butt (inside)" down to his groin. Am. Compl. ¶¶ 3, 4. C.O. Dahkle also asked

12

plaintiff sexually-explicit questions.  <u>Id.</u> ¶ 6.  Assessing plaintiff's claims under <u>Crawford</u>, and accepting the facts alleged in the amended complaint as true, the undersigned finds that plaintiff's allegations are sufficient to defeat the Motion to Dismiss.  As set forth above, this Court must look to "contemporary standards of decency."  <u>Crawford</u>, 796 F.3d at 259; <u>see</u> discussion <u>supra</u> II.A.1.  At least forty-eight states criminalize sexual contact between corrections officers and inmates, with some explicitly prohibiting sexual abuse.  <u>Crawford</u>, 796 F.3d at 259 n.8.  Plaintiff points out that New York State enacted a "zero tolerance approach to sexual abuse."  Dkt. No. 30 at 12.  New York Penal Law § 130.05 explicitly states that a person "committed to the care and custody or supervision of the state department of corrections and community supervision" is incapable of consent.  N.Y. PENAL L. § 130.05(3)(e) (2017).  New York Penal Law § 130.52 further establishes that "[a] person is guilty of forcible touching when such person intentionally, and for no legitimate purpose, forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person; or for the purpose of gratifying the actor's sexual desire."  N.Y. PENAL L. § 130.52 (2017).  Neither of these laws, both enacted in 2011, existed when <u>Boddie</u> was written.  <u>See</u> <u>Crawford</u>, 796 F.3d at 259.  New York State's enactment of these laws suggests that its "contemporary values" do not tolerate even single instances of sexual abuse in the prison setting.  <u>See</u> <u>id.</u> (highlighting states' enactment of vigorous sexual abuse laws as indicative of the changing contemporary standards of decency); <u>Shepherd v. Fischer</u>, No. 08-CV-9297 (RA), 2017 WL 666213, at *23 (S.D.N.Y. Feb. 16, 2017) ("[T]he fact that the alleged [physical] conduct constituted a crime under New York State law, and was the subject of national legislation aimed at

stopping such conduct in prisons, reinforces the conclusion that every reasonable officer would have known it violated the Eighth Amendment.")

Although C.O. Dahkle's conduct took place during a pat frisk, which, if properly conducted, serves a valid penological purpose, the nature of C.O. Dahkle's alleged actions, combined with his sexual commentary, suggests that C.O. Dahkle intended to humiliate plaintiff or act for his own sexual gratification. See Shepherd, 2017 WL 666213, at *18 ("Even if each pat frisk, if properly conducted, could have served a valid penological objective, the alleged aggressive squeezing and fondling of Plaintiff's genitalia, combined with the accompanying threats of sexual violence or retaliation, would allow a reasonable factfinder to find that the corrections officers lacked a penological purpose and intended to sexually gratify themselves, to humiliate Shepherd, or both."); Shannon v. Venettozzi, 670 F. App'x 29, 31 (2d Cir. 2016) (summary order) ("These [sexually-explicit] statements, in conjunction with Shannon's description of the forcefulness of some of the pat-downs, were sufficient to plausibly allege that Officer McTurner conducted the pat-downs either 'to gratify [his] sexual desire or to humiliate' Shannon, neither of which is a permissible motivation, rather than for any legitimate penological purpose."); Allah v. Morrison, No. 14-CV-6735, 2016 WL 4017340, at *3-4 (W.D.N.Y. July 22, 2016) ("[The defendant's] alleged taunts to [the plaintiff], including the statements, 'you know what I want' and 'give me what I want and you'll get what you want', suggest that [the defendant's] conduct was designed to humiliate [the plaintiff], gratify herself, or both."); see also Crawford, 796 F.3d at 259 ("[The defendant's] demeaning comments, including the statements '[t]hat doesn't feel like a penis to me,' [and] 'I'll run my hands up the crack of your ass if I want to' . . .

14

suggest that [the defendant] undertook the search in order to arouse himself, humiliate [the plaintiff], or both.").

Therefore, liberally construing the amended complaint, plaintiff's allegations against C.O. Dahkle are sufficient to state a prima facie Eighth Amendment claim.  See Shannon, 670 F. App'x at 31 (holding that the defendant's aggressive pat-searches, which included hitting and squeezing the plaintiff's genitals, coupled with threatening commentary, if true, amounted to an Eighth Amendment violation); Shepherd, 2017 WL 666213, at *18 (holding that the defendant's pat-frisks, which included running his hands between the plaintiff's buttocks, squeezing his genitals, and whispering sexually-laden expletives into his ear, if true, violated the Eighth Amendment); Goins v. Wosneack, 6:15-CV-6234 EAW, 2016 WL 1271701, at *1, 5 (W.D.N.Y. Mar. 30, 2016) (holding that the plaintiff's allegations that the defendant corrections officer "pressed his aroused penis against her buttocks and 'taunted' her" plausibly stated an Eighth Amendment claim.).   Accordingly, it is recommended that the defendants' Motion to Dismiss on this ground be denied.

## B. First Amendment

Plaintiff claims that defendants C.O. Dahkle, C.O. Hoffman, C.O. Meier, C.O. Langtry, C.O. Bence, C.O. Coon, DSS Shanley, and Supt. Martuscello subjected him to verbal harassment and/or threats, physical attacks, and false misbehavior reports in retaliation for his filing grievances.  See Am. Compl. generally.  Defendants move to dismiss these claims on three grounds:

(1) verbal harassment does not [ ] rise to the level of adverse

> action necessary to support a First Amendment retaliation
> claim; (2) there are no allegations in the complaint that the
> alleged physical attack by Defendants Meier, Langtry, Bence
> and Coon was causally connected to Plaintiff's prior grievance
> against Defendant Dahkle; and (3) there are no allegations in
> the complaint that the misbehavior report issued by Defendant
> Hoffman was causally connected to Plaintiff's prior grievance
> against Defendant Dahkle.

Dkt. No. 26-1 at 3-4.

Courts are to "approach  [First Amendment] retaliation claims by prisoners 'with skepticism and particular care[.]'"  See, e.g., Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema, N. A., 534 U.S. 506 (2002)).  A retaliation claim under Section 1983 may not be conclusory and must have some basis in specific facts that are not inherently implausible on their face.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); South Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 110 (2d Cir. 2009).  "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show that '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'"  Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (quoting Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004), overruled on other grounds by Swierkiewicz, 534 U.S. at 560).

To satisfy the first element of a retaliation claim, a plaintiff must show that he engaged in a protected activity.  See Espinal, 558 F.3d at 128.  The Second Circuit has concluded that use of the prison grievance system constitutes a protected activity.  See Gill, 389 F.3d at 384;  Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988) ("Moreover,

intentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that section 1983 is intended to remedy.") (alteration and internal quotation marks omitted); see also Roseboro v. Gillespie, 791 F. Supp. 2d 353, 367 (S.D.N.Y. 2011) (finding that the filing of a grievance is a protected activity); Mateo v. Fischer, 682 F. Supp. 2d 423, 433 (S.D.N.Y. 2010) (same).  Plaintiff states that he filed grievances against C.O. Dahkle, C.O. Hoffman, C.O. Meier, DSS Shanley, and Supt. Martuscello. See Am. Compl. ¶¶ 7, 8, 9, ,18, 36, 42. Thus, plaintiff satisfies the first prong of the test as he has engaged in a protected activity. See id.; Gill, 389 F.3d at 384.

### 1. Verbal Harassment and/or Threats

Defendants argue that plaintiff's First Amendment retaliation claim should be dismissed because verbal harassment does not rise to the level of adverse action necessary to support a First Amendment retaliation claim. Dkt. No. 26-1 at 3.  Verbal harassment, absent injury, is generally insufficient to rise to the level of a constitutional violation. See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) ("The claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed."); Ramirez v. Holmes, 921 F. Supp. 204, 210 (S.D.N.Y. 1996) ("Allegations of threats or verbal harassment, without any injury or damage, do not state a claim under 42 U.S.C. § 1983.").  Such statements are only sufficiently adverse for the purpose of a First Amendment retaliation claim if they "would deter a similarly situated individual of ordinary firmness of exercising constitutional rights." Gill, 389 F.3d at 380 (quoting Davis, 389 F.3d at 353) (internal quotation marks omitted).  Verbal threats may

17

constitute adverse action if the threat is sufficiently specific. <u>McFadden v. Friedman</u>, No. 9:12-CV-0685 (GTS/CFH), 2015 WL 5603433, at *17 (N.D.N.Y. Sept. 23, 2015) (citing <u>Barrington v. New York</u>, 806 F. Supp. 2d 730, 746 (S.D.N.Y. 2011)). "The less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights." <u>Mateo</u>, 682 F. Supp. 2d at 434.

### a. C.O. Dahkle, C.O. Hoffman, DSS Shanley

Plaintiff alleges that in retaliation for his filing a grievance against C.O. Dahkle for alleged sexual abuse and reporting the issue to the PREA hotline: (1) C.O. Dahkle, on two occasions, verbally harassed plaintiff, stating, "how much dick did you suck to come back over here," called him a "faggot" and a "snitch," and threatened to "fuck [him] up" on one occasion (Am. Compl. ¶¶ 13, 17); (2) C.O. Hoffman, on two occasions, verbally harassed plaintiff, warning him to not get comfortable in his housing unit because "you mess with one of us (C.O.'s) you got to deal with all of us" and informing plaintiff that "Dahkle said hi!" (<u>id.</u> ¶¶ 43, 47); and (3) DSS Shanley, on one occasion, threatened that if plaintiff continued to complain, "anything could happen" to him for "security reasons." (<u>id.</u> ¶ 39). Accepting plaintiff's allegations as true, the defendants' statements do not qualify as constitutional violations because "harassing comments and hostile behavior do not constitute adverse actions sufficient to state a retaliation claim." <u>Quezada v. Roy</u>, No. 14 Civ. 4056(CM), 2015 WL 5970355, at *21 (S.D.N.Y. Oct. 13, 2015) (citation and internal quotation marks omitted). "The line between *de minimis* verbal harassment and retaliatory adverse action . . . [hinges] on the specificity and seriousness of the

18

words used." Id.  Mindful that inmates "may be required to tolerate more than average citizens[ ] before a retaliatory action taken against them is considered adverse," Davis, 320 F.3d at 353, the undersigned concludes that C.O. Dahkle, C.O. Hoffman, DSS Shanley's statements constitute vague threats that lack the specificity and seriousness "to deter an inmate from exercising his First Amendment rights" as no real threat exists. Id. (finding that the defendant corrections officer calling the plaintiff a "faggot" does not amount to an adverse action); cf. Hill v. Laird, 06-CV-0126(JS)(ARL), 2016 WL 3632707, at *4 (W.D.N.Y. July 6, 2012) (denying summary judgment and, absent injury, finding a threat sufficiently specific where the defendant threatened, "say I found this [noose], you were trying to hurt yourself so I had to rush in and stop you . . . [y]our arm might be broken in a few places for a long time" if the plaintiff continued to file grievances); Lunney v. Brureton, No. 04 Civ. 2438(LAK)(GWG), 2007 WL 1544629, at *19 (S.D.N.Y. May 29, 2007) (denying summary judgment where, absent injury, the defendant threatened that he would break the plaintiff's neck if he continued to write grievances).  Accordingly, C.O. Dahkle, C.O. Hoffman, and  DSS Shanley's statements do not amount to adverse action.

### b. C.O. Meier

Plaintiff alleges that in retaliation for his filing a grievance against C.O. Dahkle for alleged sexual abuse and reporting the issue to the PREA hotline, C.O. Meier, on May 16, 2016, verbally harassed plaintiff by pointing his fingers directly in his face and yelling, "you want to fucking play these games? Faggots like you get C.O.'s fired" and threatened to

"fuck [plaintiff] up right now."  Am. Compl. ¶¶ 26, 27.  On July 30, 2016, C.O. Meier physically attacked plaintiff.  Id. ¶ 53-59.

        Although plaintiff alleges both a threat and an injury, C.O. Meier's May 16, 2016 statement threatened the use of immediate force, and the defendant's failure to follow through immediately on that threat, weighs against a finding of adverse action.  Although there is no bright-line rule as to how attenuated the verbal threat and the alleged use of force can be to have them be considered causally connected, courts have dismissed claims of retaliation on the basis of verbal threats where the alleged use of force occurred months after the threat.  See Pierott v. Hahn, No. 9:15-CV-1415 (DNH/CFH), 2017 WL 4221117, at *8 (N.D.N.Y. July 28, 2017) ("Plaintiff has not made a strong showing of temporal proximity in support of his retaliation claim: he merely states that defendant Hahn threatened to punch him on August 4, 2014, and on October 1, 2014, defendant Hahn 'decided to do that.'  Relying solely on temporal proximity — here, a period of approximately two months — is insufficient to support a claim of retaliation."); Sloane v. Mazzuca, No. 04 CV 8266 (KMK), 2006 WL 3096031, at *14 (S.D.N.Y. Oct. 31, 2006) (concluding that the four month long "lapse of time between the [protected activity] and the alleged retaliation strongly suggests that there is no causal connection between these events."); cf. Flemming v. King, No. 14-CV-316 (DNH/CFH), 2016 WL 5219995, at *5 (N.D.N.Y. June 20, 2016) ("The only circumstantial evidence supporting the finding of a causal connection is Flemming's assertions that the alleged assaults committed by both defendants happened on the same day that he threatened to file a lawsuit against those same defendants.  However, this temporal proximity, coupled with the common identity

20

between the officers who Flemming verbalized his threat to, and the officers who allegedly assaulted him, are sufficient to establish the third prong of Flemming's First Amendment retaliation claim."); Jordan v. Garvin, No. 01CIV4393LTS/GWG, 2004 WL 302361, at *6 (S.D.N.Y. Feb. 17, 2004) ("[T]he existence of a temporal connection as close as the one present here – just two days – is sufficient by itself to establish the requisite inference of a causal connection."). That C.O. Meier attacked plaintiff two months after he made the threat is too far removed to coincide with the threat for purposes of constituting adverse action, even more so because C.O. Meier's threat indicated that he intended to act immediately. See id. Plaintiff "does not . . . allege that these threats were followed by any physical injury[,] and as a result, they are not actionable." LaRocco v. N.Y.C. Dep't. of Corr., No. 99CIV.9759SHS/RLE, 2001 WL 1029044, at *5 (S.D.N.Y. Aug. 31, 2001). Absent an appreciable injury following in close time to the threat of force, C.O. Meier's statements, albeit inappropriate, lack the specificity and seriousness "to deter an inmate from exercising his First Amendment rights." Quezada, 2015 WL 5970355, at *21. Accordingly, C.O. Meier's statements do not amount to adverse action.

### c. Supt. Martuscello

Plaintiff alleges that in retaliation for his filing a grievance against C.O. Dahkle for alleged sexual abuse and reporting the issue to the PREA hotline, Supt. Martuscello, on one occasion, yelled at plaintiff for his complaints and grievances and "remind[ed] [plaintiff] of the deferred SHU time" imposed from disciplinary sanctions. Am. Compl. ¶¶ 39-41. Whether a defendant's verbal threat constitutes an adverse action under the First

Amendment depends on the specificity and context in which the threat was communicated. Lunney, 2007 WL 1544629, at *23.

Assessing the facts in the light most favorable to plaintiff, Supt. Martuscello's "reminder" of plaintiff's deferred SHU time, immediately following their discussion of plaintiff's grievances and complaints, implied that Supt. Martuscello would place plaintiff in SHU if he continued to file complaints and grievances. Id. ¶ 41. Given the context and specificity of the alleged threat – referencing plaintiff's deferred SHU time and discussing plaintiff's grievances and complaints – a similarly-situated person of ordinary firmness would be deterred from filing grievances. See Hill, 2014 WL 1315226, at *8 (finding that the defendant's threat to file false disciplinary reports to keep the plaintiff confined in SHU amounted to an adverse action); Sanchez v. Velez, No. 08 Civ. 1519(NRB), 2009 WL 2252319, at *5 (S.D.N.Y. July 24, 2009) (concluding that the plaintiff's allegation that the defendant corrections officer threatened to place him in "the box . . . [which] in prison parlance typically refers to punitive segregation" may constitute an adverse action and is sufficient for pleading purposes). Accordingly, Supt. Martuscello's statements amount to adverse action.

## 2. Causal Connection

Plaintiff claims that on July 30, 2016, C.O. Meier, C.O. Langtry, C.O. Bence, and C.O. Coon physically attacked him in retaliation for his grievances and complaints.[5] Am.

---

[5] Defendants are not seeking dismissal of plaintiff's claims for excessive force against these defendants. See Dkt. No. 26-1.

Compl. ¶ 53; Dkt. No. 1 ¶ 5 (Compl.).  Plaintiff also contends that defendant C.O. Hoffman "falsified a misbehavior report which subjected [him] to confinement" in retaliation for his grievance against C.O. Dahkle.  Am. Compl. ¶¶ 19-20.  Defendants argue that plaintiff fails to adequately allege that the July 30, 2016 physical attack and the May 15, 2016 misbehavior report were causally connected to any protected speech.  Dkt. No. 26-1 at 13-14.

> In determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and
> (iv) statements by the defendant concerning his motivation.

Baskerville v. Blot, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002).  "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action."  Id.  In assessing temporal proximity, the Second Circuit has established that no more than six months between the protected activity and the adverse action establishes the temporal proximity sufficient to support an inference of causal connection.  King v. McIntyre, No. 9:11-CV-1457, 2015 WL 1781256, at *5 (N.D.N.Y. Apr. 8, 2016) (quoting Espinal, 558 F.3d at 129) (internal quotation marks omitted).


### a. July 30, 2016 Excessive Force

Plaintiff concedes that he fails to allege First Amendment retaliation claims against defendants C.O. Langtry, C.O. Bence, and C.O. Coon.  Dkt. No. 30 at 20.  With respect to C.O. Meier, plaintiff argues that facts he set forth in the amended complaint adequtely

23

establish a causal connection between the April 16, 2016 grievance against C.O. Dahkle and the July 30, 2016 incident.  Id.  Additionally, in an attempt to demonstrate causal connection, plaintiff refers the Court to his allegation that C.O. Meier threatened to "fuck [him] up" on May 23, 2016.  Id. at 21.

As discussed above, plaintiff's filing of a grievance constitutes a protected activity. See Gill, 389 F.3d at 384.  Plaintiff's allegation of excessive force, if true, constitutes an adverse action.  Baskerville, 224 F. Supp 2d at 731-32; Flemming, 2016 WL 5219995, at *5.  Affording plaintiff special solicitude, his allegations are sufficient to establish causal connection.  C.O. Meier's statements during the alleged use of excessive force – (1) "I should break this shit" after twisting plaintiff's wrist, and (2) "stay the fuck on the wall" (Am. Compl. ¶ 58) – do not suggest a motivation for retaliation.  See Cole v. New York State DOCCS, No. 9:14-CV-0539 (BKS/DEP), 2016 WL 5394752, at *26 (N.D.N.Y. Aug. 25, 2016) ("While plaintiff has offered proof of his complaints and the filing of a lawsuit against Durante, the gap between the protected conduct asserted and the defendant's alleged retaliatory act is tenuous . . . However, when coupled with the statements attributed to Durante, which, if true, strongly suggest that he was motivated to assault plaintiff for filing the lawsuit," these circumstances preclude dismissal).  However, plaintiff does allege an earlier confrontation with C.O. Meier on May 16, 2016 where C.O. Meier "pointed [his hands] directly in [his] face" and threatened to "fuck [him] up right now."  Am. Compl. ¶¶ 26-27.  Although the undersigned concludes that such conduct did not violate plaintiff's First Amendment rights, the statements support plaintiff's broader retaliation claim.  Baskerville, 224 F. Supp. 2d at 733 n.6 (finding that, although the defendant's comments "did not

24

violate plaintiff's constitutional rights" as First Amendment harassment, the plaintiff's allegations "support[ed] his retaliation claim" as "circumstantial evidence of retaliatory intent."); see subsection III.B.1.b supra.  Moreover, although the alleged physical attack took place two months later, on July 30, 2016, this is well within the Second Circuit's six-month time frame for establishing a causal connection between plaintiff's filing of a grievance and C.O. Meier's use of excessive force.  See Espinal, 558 F.3d at 129 ("[W]e find that the passage of only six months between the dismissal of [the plaintiff's] lawsuit and an allegedly retaliatory beating . . . is sufficient to support an inference of a causal connection.").  Plaintiff further claims that C.O. Meier issued him an "overexaggerat[ed]" misbehavior report on May 17, 2016 charging him with, in part, threats and violent conduct.  Am. Compl. ¶ 31.  That plaintiff was found not guilty of these charges at his Tier III disciplinary hearing also supports a causal connection as it serves as "circumstantial evidence of retaliatory intent." Baskerville, 224 F. Supp. 2d at 733.

Assessing plaintiff's amended complaint in the light most favorable to him, his First Amendment retaliation claim against C.O. Meier is sufficient to withstand defendants' Motion to Dismiss as he has "raised a colorable suspicion that the adverse action[ ] taken against him may have been in retaliation for his protected conduct . . . ." Baskerville, 224 F. Supp. 2d at 733.  As plaintiff has alleged sufficient facts to support an inference that his protected conduct played a substantial role in C.O. Meier's alleged use of excessive force, it is recommended that defendants' Motion to Dismiss, insofar as it relates to plaintiff's claims of retaliation against C.O. Meier, be denied.  It is also recommended that plaintiff's retaliation claims against C.O. Langtry, C.O. Bence, and C.O. Coon be dismissed as

plaintiff fails to provide any factual allegations to support a claim that these defendants violated his First Amendment rights.

### b. May 15, 2016 Misbehavior Report

Plaintiff alleges that in retaliation for his filing grievances and complaints, C.O. Hoffman issued a falsified misbehavior report. Am. Compl. ¶ 15. As discussed above, the filing of a grievance constitutes a protected activity. See Gill, 389 F.3d at 384 (finding that the plaintiff sufficiently alleged his participation in a protected activity through his use of the prison grievance system). Moreover, a defendant's retaliatory filing of a falsified misbehavior report that results in disciplinary segregated confinement constitutes adverse action. See Gill, 389 F.3d at 384 (finding that a false misbehavior report that resulted in the plaintiff's placement in keeplock constituted adverse action); Gayle v. Gonyea, 313 F.3d 677, 681 (2d Cir. 2002) (emphasis added) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983."). "[T]he mere allegation that a false misbehavior report has been issued to an inmate, standing alone, does not rise to [a] level of constitutional significance." Reed v. Doe No. 1, No. 9:11-CV-0250 (TJM/DEP), 2012 WL 4486086, at *5 (N.D.N.Y. July 26, 2012) (citing Boddie, 105 F.3d at 862). However, a plaintiff's allegation that a defendant issued a false misbehavior report in response to the plaintiff's protected activity can support a claim of unlawful retaliation. Id. (citing Franco v. Kelly, 854 F.2d 584, 589 (2d. Cir 2008)). The plaintiff bears the burden of establishing that "the protected conduct was a substantial or motivating factor in the

26

prison officials' decision to discipline the plaintiff." <u>Gayle</u>, 313 F.3d at 681.

Plaintiff alleges that on May 14, 2016, C.O. Dahkle harassed him in front of fellow inmates and other corrections officers, calling plaintiff a "snitch" and referring to plaintiff's complaints and grievances regarding the alleged sexual assault. Am. Compl. ¶ 17.  The next day, C.O. Hoffman issued plaintiff a misbehavior report alleging, in part, that plaintiff "yell[ed] out his cell window to another inmate sating 'yo all you gotta do is call that PREA hotline and say the C.O. touched your dick doing a frisk or something, doesn't matter what you say.  Just make something up it works all the time.'"  Dkt. No. 1-1 at 4.  Plaintiff appears to suggest that C.O. Hoffman issued the May 15, 2016 misbehavior report in response to C.O. Dahkle's "spreading rumors of plaintiff being a homo and a snitch for . . . reporting the sexual assault . . . ."  Dkt. No. 30 at 22-23.  Accepting plaintiff's factual allegations as true, it is plausible that C.O. Hoffman learned of plaintiff's grievances on May 14, 2016, when C.O. Dahkle accused plaintiff of being a snitch and referenced his grievances, or some other time, and, in turn, filed a false misbehavior report.  Am. Compl. ¶¶ 17, 19; <u>see</u> <u>Linares v. Mahunik</u>, No. 9:05-CV-625 (GLS/RFT), 2006 WL 2595200, at *9 (N.D.N.Y. Sept. 11, 2006) (denying the defendant's motion to dismiss where the plaintiff filed a grievance on April 17, 2005 and received a misbehavior report the next day).

Defendants argue that C.O. Hoffman's statements – "you mess with one of us (C.O's) you got to deal with all of us" on June 20, 2016 and "Dahkle said hi!" on July 7, 2016 – were made well after C.O. Hoffman filed the May 15, 2016 misbehavior report and over two months after plaintiff's grievance against C.O. Dahkle; thus, the statements are not causally connected to the protected conduct.  Dkt. No. 26-1 at 14.  Both statements,

however, occurred within six months of plaintiff's grievance against C.O. Dahkle.  Am. Compl. ¶¶ 43, 47, 53-55; see Espinal, 558 F.3d at 129 ("[W]e find that the passage of only six months between the dismissal of [the plaintiff's] lawsuit and an allegedly retaliatory beating . . . is sufficient to support an inference of a causal connection.").  In addition, these statements support plaintiff's contention that C.O. Meier and C.O. Hoffman were retaliating against him.  As further evidence of an improper retaliatory motive, C.O. Hoffman told plaintiff that the misbehavior report "did not exist" which suggests that the misbehavior report was not legitimate.  Id. ¶ 47.  Additionally, a Tier III disciplinary hearing was never conducted on the charges, which further supports plaintiff's claim that the misbehavior report was falsified, and, therefore, retaliatory.  Id.; see Odom v. Dixon, No. 04-CV-889F, 2008 WL 466255, at *22 (W.D.N.Y. Feb. 15, 2008) (noting that dismissal of a retaliation claim is "improper where an inmate [ ] is not granted a hearing on the alleged false disciplinary charges."); Linares, 2006 WL 2595200, at *9 ("A plaintiff may meet the burden of proving an inappropriate retaliatory motive by presenting circumstantial evidence of a retaliatory motive, such as temporal proximity, thus obviating the need for direct evidence.").  These allegations, considered together, raise a "colorable suspicion that the adverse action[ ] taken against [plaintiff] may have been in retaliation for his protected conduct."  Baskerville, 224 F. Supp. 2d at 733.  As plaintiff has alleged facts sufficient to support an inference that his protected conduct played a substantial or motivating factor in C.O. Hoffman's filing an allegedly falsified, retaliatory misbehavior report, it is recommended that defendants' Motion to Dismiss, insofar as it relates to C.O. Hoffman's retaliation, be denied.

### C. Supervisory Liability

Plaintiff claims that he had conversations with, and sent grievances to, Supt. Martuscello and DSS Shanley regarding C.O. Dahkle, C.O. Hoffman, and C.O. Meier's alleged retaliation and plaintiff's continued safety at Coxsackie. Am. Compl. ¶¶ 14-15, 17-18, 32, 39-41. Thus, plaintiff appears to contend that Supt. Martuscello and DSS Shanley are liable for C.O. Dahkle, C.O. Hoffman, and C.O. Meier's conduct under the theory of supervisory liability. See id. Defendants argue that plaintiff's supervisory liability claims should be dismissed because Supt. Martuscello and DSS Shanley were not personally involved in the alleged constitutional violation. Dkt. No. 26-1 at 15-19.

Supervisory officials may not be held liable for their subordinates' constitutional violations merely because they are in a position of authority. Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). In this Circuit, the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991) (additional citations omitted)). However, supervisory personnel may be considered personally involved in their subordinate's conduct if:

> (1) the defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

29

> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (additional citation omitted)).[6]   Absent a subordinate's underlying constitutional violation, there can be no supervisory liability.  Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003); see Elek v. Inc. Vill. of Monroe, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) (collecting cases for the proposition that "because [p]laintiff has not established any underlying constitutional violation, she cannot state a claim for 1983 supervisory liability.").   Construing the amended complaint liberally, plaintiff appears to allege supervisory liability under Colon factors one, two, and five.  See Colon, 58 F.3d at 873.

## 1. Direct Participation

Plaintiff's claim under the first factor, Supt. Martuscello's direct participation in a constitutional violation, cannot stand.  After plaintiff first alerted him to the alleged sexual assault, Supt. Martuscello informed plaintiff that "someone [would] be coming to see [him] soon," and, thereafter, plaintiff met with non-party Sgt. Davis and the Office of Special Investigation.  Am. Compl. ¶¶ 11, 12, 16.  Because it is within the purview of a superior

---

[6] Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement.  Pearce v. Estate of Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (summary order) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F. Supp. 2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster        . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

officer to delegate responsibility to others, Supt. Martuscello's referral to subordinate officers does not establish his personal involvement. See Vega v. Artus, 610 F. Supp. 2d 185, 198 (N.D.N.Y. 2009) (finding no personal involvement where "the only involvement of the supervisory official was to refer the inmate's complaint to the appropriate staff for investigation.") (citing Ortiz-Rodriguez v. N.Y. State Dep't of Corr. Servs., 491 F. Supp. 2d 342, 347 (W.D.N.Y. 2007)).

### 2. Failure to Remedy

Under the second Colon factor, failure to remedy a wrong of which the defendant was aware, plaintiff appears to allege that Supt. Martuscello and DSS Shanley, in their roles as supervisors at Coxsackie, failed to take remedial measures after being informed of alleged constitutional violations. See Am. Compl. ¶¶ 14-15, 17-18, 32, 39-41; Colon, 58 F.3d at 873. Defendants argue that such contentions are vague and conclusory, and do not amount to a claim for supervisory liability. Dkt. No. 26-1 at 17-18.

Plaintiff contends that on May 23, 2016, he spoke with Supt. Martuscello and DSS Shanley, informing the defendants that he "fear[ed] for life" due to the corrections officers' continued retaliation, including C.O. Hoffman's falsified misbehavior report and C.O. Meier's verbal threats. Am. Compl. ¶ 32. Both defendants told plaintiff to "handle [his] problems at the [upcoming] disciplinary hearing" while laughing and joking. Id. On May 26, 2016, plaintiff filed a grievance for the "constant retaliatory practices by way of disciplinary action . . . from C.O. Hoffman, threats from C.O. Meier . . ." as well as Supt. Martuscello and DSS Shanley's failure to protect him from the continued retaliatory practices of

31

Coxsackie staff members. Id. ¶ 36. Plaintiff sent a copy of this grievance directly to Supt. Martuscello. Id. On June 24, 2016, plaintiff sent Supt. Martuscello a copy of a complaint alleging claims of harassment and retaliation. Id. ¶ 44; Dkt. No. 12-2 at 19-30.[7] Plaintiff alleges that, C.O. Meier, C.O. Langtry, C.O. Bence, and C.O. Coons' attacking him "could have been avoided had [Supt. Martuscello and DSS Shanley] took [sic] immediate action . . . ." Dkt. No. 30 at 27.

To the extent that plaintiff suggests that Supt. Martuscello and DSS Shanley should be held liable for C.O. Dahkle, C.O. Meier, and C.O. Hoffman's verbal harassment, this claim cannot proceed as the undersigned has recommended that the underlying verbal harassment claims be dismissed for failure to state a claim. See subsection III.B.1.a.b. supra; see also Guillory v. Haywood, No. 9:13-CV-01564 (MAD/TWD), 2015 WL 268933, at *20 (N.D.N.Y. Jan. 21, 2015) (recommending the dismissal of the plaintiff's supervisory liability claim where no underlying constitutional violation remains); Mills v. Luplow, No. 04-CV-00005(A)(M), 2009 WL 2606240, at *14 (W.D.N.Y. Mar. 31, 2009) ("[The plaintiff's] failure to protect and supervisory liability claims arise only from the conduct alleged in the first and second causes of action. Therefore, to the extent I recommend that first and second causes of action be dismissed, I likewise recommend that [the plaintiff's] third cause of action be dismissed.").

---

[7] Plaintiff attempted to file a civil petition pursuant to New York Civil Service Law § 75 against Supt. Martuscello, C.O. Dahkle, C.O. Hoffman and other named defendants alleging "(1) Incompetency, failure and/or neglect in the performance of duties; (2) Abuse of Authority; (3) Harassment; (4) Misconduct; (5) threats of physical abuse; (6) Retaliation for exercising [his] First Amendment Right to petition the government for redress of grievance" based on the same facts as the pending motion. Dkt. No. 12-2 at 19-28. However, the New York State Department of Civil Service informed plaintiff that they do "not have jurisdiction over the internal personnel matters" of DOCCS. Id. at 29. DOCCS returned plaintiff's documents and informed him that his issues "would best be addressed by the Inmate Grievance Officer at [his] facility." Id. at 30.

Insofar as plaintiff suggests that Supt. Martuscello and DSS Shanley should be held liable for C.O. Hoffman's falsified misbehavior report or C.O. Dahkle's alleged sexual assault, "[a]n isolated incident in which an inmate is deprived of some constitutional right does not rise to supervisory liability." Delgado v. New York City Dep't of Corr., No. 90 Civ. 0663 (VLB), 1993 WL 597452, at *5 (S.D.N.Y. Sept. 22, 1993); see Dallio v. Heber, 678 F. Supp. 2d 35, 43-44 (N.D.N.Y. 2009) (collecting cases for the proposition that the second Colon factor applies to "cases involving continuing unconstitutional conditions" rather than a single incident). Under the second Colon factor, a supervisory official can only be held liable if there is an "ongoing, and therefore correctable, constitutional violation[ ] – not a specific event that is later subject to formal review by designated officials once the constitutional violation has already concluded." Carpenter v. Apple, No. 9:15-CV-1269 (GTS/CFH), 2017 WL 3887908, at *10 (N.D.N.Y. Sept. 5, 2017) (citation omitted). Here, plaintiff's allegations of a single sexual assault and a single falsified misbehavior report each represent specific, isolated events rather than ongoing practices. Moreover, Supt. Martuscello and DSS Shanley could not have effected a change in this misconduct because plaintiff confronted Supt. Martuscello and DSS Shanley *after* the alleged sexual assault and falsified misbehavior report had already occurred and does not contend that either C.O. Meier or C.O. Hoffman has continued this misconduct. Thus, the defendants cannot be held responsible for failing to remedy the alleged constitutional violations. See Burton v. Lynch, 664 F. Supp. 2d 349, 362 (S.D.N.Y. 2009) ("A superintendent cannot 'remedy' a violation of constitutional rights which has already ceased by ordering some change in prison conditions."); Harnett v. Barr, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008)

("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation."). Accordingly, Supt. Martuscello and DSS Shanley were not personally involved in C.O. Dahkle and C.O. Hoffman's constitutional violations, and, therefore, are not liable under the second <u>Colon</u> factor.

### 3. Deliberate Indifference

Under the fifth <u>Colon</u> factor, deliberate indifference, plaintiff appears to suggest that Supt. Martuscello and DSS Shanley acted with deliberate indifference to his rights by failing to protect him from C.O. Meier, C.O. Langtry, C.O. Bence, and C.O. Coon's excessive force after he informed the defendants that he feared for his life due to constant harassment and threats.  Am. Compl. ¶ 32.  "[A] supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring . . . provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and [the plaintiff's] injury."  <u>Poe v. Leonard</u>, 282 F.3d 123, 140 (2d Cir. 2002).  Moreover, "[t]he personal involvement and liability of supervisory personnel is established when the supervisory official has actual or constructive notice of unconstitutional practices and demonstrates . . . deliberate indifference by failing to act."  <u>Rahman v. Fisher</u>, 607 F. Supp. 2d 580, 586 (S.D.N.Y. 2009) (citation and internal quotation marks omitted).

Although plaintiff informed Supt. Martuscello and DSS Shanley of the verbal harassment and threats, the harassment and threats do not amount to constitutional

34

violations, and, therefore, the supervisory defendants cannot be held liable.  See Hernandez, 341 F.3d at 145.  However, the undersigned must review plaintiff's supervisory liability claims as they relate to C.O. Meier as the undersigned concluded that plaintiff stated a prima facie claim for retaliation against C.O. Meier.[8]  Arguably, when plaintiff informed Supt. Martuscello and DSS Shanley of C.O. Meier's statements ("you want to fucking play these games? Faggots like you get C.O.'s fired" and threat to "fuck [plaintiff] up right now" Am. Compl. ¶¶ 26, 27), the supervisory defendants were put on "notice of a condition that left unaddressed could be reasonably expected to result in an assault" on plaintiff.  Rahman, 607 F. Supp. 2d at 586 (S.D.N.Y. 2009); see Merriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989) (finding the supervisory defendants liable for the defendant corrections officer's excessive force where evidence demonstrated that the supervisory defendants should have known, prior to the physical attack, that the plaintiff was in danger but failed to ensure his safety).  Therefore, because Supt. Martuscello and DSS Shanley had prior notice of the potential of an assault, failed to act on that information, and plaintiff was eventually assaulted, plaintiff has stated a claim under the fifth Colon factor.

Accordingly, plaintiff has adequately alleged Supt. Martuscello and DSS Shanley's personal involvement under the fifth Colon factor through their deliberate indifference to

---

[8] Even though C.O. Meier's alleged verbal harassment cannot form the basis of supervisory liability claim for First Amendment retaliation, C.O. Meier's statements serve as "circumstantial evidence of [his] retaliatory intent" in the alleged use of excessive force against plaintiff. Thus, C.O. Meier's statements can be considered in determining the supervisory claims against Supt. Martuscello and DSS Shanley.  See Baskerville, 224 F. Supp. 2d at 733 n.6 (finding that, although the defendant's comments did not violate plaintiff's constitutional rights" as First Amendment harassment, the plaintiff's allegations support[ed] his retaliation claim" as "circumstantial evidence of retaliatory intent.").

his rights, and it is recommended that defendants' Motion to Dismiss, insofar as it relates to supervisory claims against Supt. Martuscello and DSS Shanley, be denied.

## IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that defendants' partial Motion to Dismiss (Dkt. No. 26) be **GRANTED IN PART**:

Insofar as it seeks dismissal of plaintiff's claims against C.O. Dahkle, C.O. Hoffman, and C.O. Meier for verbal harassment and/or threats, the motion be **GRANTED**, and the claims be **DISMISSED** with prejudice; and it is further

**RECOMMENDED**, that defendants' partial Motion to Dismiss (Dkt. No. 26) be **DENIED IN PART**:

(1) Insofar as it seeks dismissal of plaintiff's Eighth Amendment claim against C.O. Dahkle for sexual assault,

(2) Insofar as it seeks dismissal of plaintiff's claims against Supt. Martuscello for verbal harassment and/or threats,

(3) Insofar as it seeks dismissal of plaintiff's First Amendment claims against C.O. Meier and C.O. Hoffman for retaliation,

(4) Insofar as it seeks dismissal of plaintiff's supervisory liability claims against Supt. Martuscello for C.O. Dahkle's verbal harassment and/or threats,

(4) Insofar as it seeks dismissal of plaintiff's supervisory liability claims

against Supt. Martuscello and DSS Shanley for C.O. Meier's retaliation,

the motion be **DENIED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation

and Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE**

**APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y

of HHS, 892 F.2d 15 (2d Cir. 1989); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a),

6(e).[9]

Dated:       October 27, 2017
             Albany, New York

             _Christian F. Hummel_
             Christian F. Hummel
             U.S. Magistrate Judge

---

[9] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(C).