| NEW YORK STATE **Corrections and Community Supervision** **DIRECTIVE** | TITLE **Control of & Search for Contraband** | NO. 4910 |
| --- | --- | --- |
| | | DATE 11/07/2017 |

| SUPERSEDES DIR# 4910 Dtd. 09/27/2016 | DISTRIBUTION A B | PAGES PAGE 1 OF 23 | DATE LAST REVISED |
| --- | --- | --- | --- |

| REFERENCES (Include but are not limited to) Dir. #4004, 4006, 4027B, 4091, 4403, 4910A, 4913, 4932, 4938, and 4944; ACA Standards 4-4192, 4-4193, 4-4194, 4-4281, 4-4282, 4-4285; 7NYCRR Part 200; Health Services Policy; Penal Law 210.45 | APPROVING AUTHORITY *James A. O'Gorman* |
| --- | --- |

| Section | | Pg. | Section | | | Pg. | Section | | Pg. |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| I. | SCOPE | 1 | | C. Attorney Visits | | 12 | ATTACHMENTS | | |
| II. | POLICY | 1 | | D. Special Housing Units | | 12 | A. Recording/Logging | | 23 |
| III. | PERSONAL SEARCHES | 2 | | E. Restriction/Secure Units | | 13 | | | |
| | A. Metal Detector | 2 | | F. Psychiatric Housing | | 13 | | | |
| | B. Pat Frisk | 3 | | G. Release Without Supervision | | 13 | | | |
| | C. Mouth Search | 6 | | H. Escorted Trip | | 13 | | | |
| | D. Strip Search | 6 | | I. Visits | | 14 | | | |
| | E. Strip Frisk | 6 | | J. Drug & Special Watches | | 14 | | | |
| | F. Probable Cause | 7 | V. | SEARCH OF FACILITY SPACES | | 16 | | | |
| | G. Guidelines for Strip Searches/Frisks | 8 | | A. Definitions | | 16 | | | |
| | H. Body Cavity Search | 9 | | B. Routine/Sch. Search | | 17 | | | |
| | I. Radiological Search | 11 | | C. Unsched./Response-Type | | 19 | | | |
| | J. Medicine Bag Search | 12 | | D. Placement of Inmates | | 20 | | | |
| IV. | SITUATION SEARCHES | 12 | | E. Religious Areas | | 21 | | | |
| | A. Transfer | 12 | | F. Search of Quarters and Property | | 21 | | | |
| | B. Contact Visits | 12 | | G. Documentation | | 21 | | | |
| | | | VI. | CONTRABAND-HANDLING/DISP. | | 22 | | | |

I.   **SCOPE**:  This directive sets forth the rationale for and the procedures to be followed in the search for and control of contraband.  It also standardizes procedures for the inspection and search of an inmate's person, living quarters, or any other area in or around a correctional facility to aid in the control of contraband.

II.   **POLICY**:  The presence of contraband within a facility and its subsequent possession and/or use by inmates threatens the security of the facility, endangers the safety of inmates, employees, visitors, and the community, and impairs rehabilitation programs.

Search for and seizure of contraband is a responsibility of facility management.  The experience of correctional authorities in the operation of facilities has demonstrated that special unannounced, as well as routine periodic, searches of facility areas, inmate living quarters, and the inmate's person are essential to the discovery and elimination of contraband.

Introducing or possessing contraband in a facility <u>may be</u> a violation of law and violators are to be prosecuted.  Visitors attempting to introduce contraband or in possession of contraband will be denied permission to visit (ref. Dir. #4403, "Inmate Visitor Program").  Contraband found in the possession of inmates will be confiscated promptly by facility personnel within the guidelines outlined in this directive, Directive #4910A, "Contraband/Evidence – Handling, Storage, and Disposition," and in Departmental disciplinary procedures (ref. Dir. #4932, "Chapter V, Standards Behavior & Allowances").

It is important that inspections and searches be properly carried out by designated personnel.  It is equally important that they be well supervised and accomplished in a timely and orderly fashion.

III.  **PERSONAL SEARCHES**:  Searching an inmate's person is sound correctional practice and a necessary element of contraband control.  The employee conducting a personal search must assure its thoroughness and not offend the dignity of the inmate being searched.  Staff must refrain from demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, and obscene language or gestures during these searches as well as during other encounters with inmates.

A.  Metal Detector Search

1.  Definition:  A metal detector search means a search in which an inmate is passed through a metal detector, or in which a hand-held metal detector is passed over an inmate's person, or an inmate is required to sit in a Body Orifice Scanning System (BOSS), or required to pass through a Cellsense unit to determine whether there are metal objects in his or her clothing, or attached to or concealed within his or her body.

2.  Application

a.  An inmate, even under escort, will be subjected to a metal detector search:

(1)  Upon reception into DOCCS or return to DOCCS custody from outside agencies, return from temporary release, or as a returned absconder, etc.;

(2)  Prior to transfer from one facility to another, and at the receiving facility following transfer;

(3)  Prior to a visit in a maximum or a medium correctional facility;

(4)  After a contact visit, or attending any facility affair where family and visitors are present;

(5)  Upon admission to a special housing unit, work release restriction unit, or psychiatric housing unit;

(6)  Prior to an outside trip (e.g., medical, court, funeral/sickbed) and upon return to the facility;

(7)  All inmates will pass through a walk-through metal detector prior to leaving an industry area even if under escort; and

(8)  All inmates will undergo a metal detector search (handheld, walk-through, Cellsense, Boss chair, etc.) prior to leaving a vocational area even if under escort.

b.  An inmate, even under escort, may be subjected to a metal detector search:

(1)  Going to and from work, housing, medical, and program areas;

(2)  Entering and leaving the facility on outside work details;

(3)  In conjunction with a pat frisk (as described below);

(4)  Meeting with or in the presence of Departmental officials or visitors; and

(5)  As directed or authorized by supervisory staff.

    c.   Procedure for an inmate with a "specific implanted medical electronic device:"

        (1)   Should an inmate inform staff that they have a specific implanted medical electronic device and choose not to pass through the walk-through metal detector, the Officer in charge shall verify their medical permit. If the inmate is not in possession of the medical permit, the facility Health Services Unit will be contacted to verify the inmate's claim. Any discrepancies shall be reported to the area supervisor.

        (2)   Once frisking staff are satisfied that the inmate has such an implanted device, the inmate, if necessary, should be directed to stand to the side or in an area designated to wait for further processing so as not to hold up the process of others being searched.

        (3)   The inmate shall be pat frisked and subjected to a hand-held metal detector search, BOSS chair search, or pass through a Cellsense unit as appropriate. Staff shall not conduct the search in close proximity to the implanted medical electronic device with the exception of the Cellsense unit.

        (4)   Should frisking staff be unable to clear the inmate at the conclusion of the above search/frisk methods, a visual inspection of the area in question or further processing may be warranted in accordance with Section III-F of this directive, as authorized by a Sergeant or higher ranking Officer.

        (5)   The area supervisor shall be notified when an inmate claiming to have a specific implanted medical electronic device is not in possession of a medical permit or is unable to provide it and confirmation cannot be obtained through the facility Health Services Unit. The inmate shall **not** be required to pass through a walk-through metal detector and will be processed as indicated above. All attempts shall be made to ascertain the legitimacy of the inmate's claim.

    d.   Whenever a metal detector search is conducted in conjunction with a strip frisk/strip search, the lower abdomen, groin, and anal areas will be scanned with the inmate wearing at least undershorts for males, and bras and panties for females and those inmates in a male correctional facility who have been issued a permit to possess and wear a bra.

    e.   Whenever the BOSS chair is used in conjunction with a strip search or a strip frisk, the inmate will be required to sit in the device fully clothed (i.e., wearing standard undergarments, pants, and shirt - no coat).

B.   <u>Pat Frisk</u>

   1.   Definition: A pat frisk means a search by hand of an inmate's person, and his or her clothes, while the inmate is clothed, except that the inmate shall be required to remove coat, hat, and shoes. The inmate will be required to run fingers through hair and spread fingers for visual inspection. The search shall include searching into the inmate's clothing. Contact through the clothing with the genitalia, groin, breast, inner thigh, and buttocks is a necessary component of a thorough pat frisk. However, staff must avoid any penetration of the anal or genital opening through the clothing during a pat frisk. Staff must not lift or otherwise manipulate the genitalia during a pat frisk. Requiring an inmate to open his or her mouth is not part of a pat frisk (see Section III-C, "Mouth Search," below).

2. Application

    a.   A pat frisk shall be made of inmates:

        (1)  To be interviewed by Departmental officials, the Board of Parole, or official visitors;

        (2)  Entering the visiting room (except at community-based facilities);

        (3)  When the entire or an individual area of the facility or living quarters are searched;

        (4)  When there is an articulable basis to suspect that an inmate may be in possession of contraband; or

        (5)  As directed or authorized by supervisory staff.

    b.   A pat frisk may be made of inmates:

        (1)  Going to and returning from housing areas and/or outside work details; and

        (2)  Enroute to and from program and recreation areas.

Note:  Use of a hand-held metal detector is always appropriate to supplement the pat frisk.

3. Cross Gender Pat Frisks

    a.   Male Inmates

        (1)  Pat frisks will be performed by Officers regardless of sex.  However, a female Officer shall not perform a non-emergency pat frisk of any male Muslim inmate over the objection of the inmate if a male Officer is present at the location where the pat frisk is to be conducted and is available to perform the pat frisk.  This in no way restricts the ability of a female Officer to perform a pat frisk on a male Muslim inmate when there is an articulable basis to suspect that the inmate may possess contraband, or in emergency situations.

        (2)  When pat frisking an inmate assigned to a male correctional facility who has been issued a permit to possess and wear a bra (such as an inmate diagnosed with Gender Dysphoria/GID or who has breast development), a male Officer shall not use the palm of his hand when frisking the clothed breast area of the inmate.  Instead, a male Officer shall use the back and side of his hand only and shall use care not to pat the clothed nipples of the inmate.  This limitation is not applicable to a female Officer conducting a pat frisk.  When frisking the clothed inner thigh, groin, or buttocks, an Officer shall use care not to penetrate any genital opening of the inmate.  All Officers shall conduct themselves professionally, alert to the perceived sensitive nature of the frisk.

b.   Female Inmates

(1)   Facilities shall not permit cross gender pat frisks of female inmates, absent exigent circumstances.  Facilities shall not restrict female inmates' access to regularly available programming or other out-of-cell opportunities in order to comply with this provision.  Exigent circumstances mean any set of temporary and unforeseen circumstances that require immediate action in order to combat a threat to the security or institutional order of a facility.  When exigent circumstances require the cross gender pat frisk of female inmates, the provisions of Section III-B-3-b-2 will be followed.

(2)   A male officer may perform emergency pat frisks of female inmates when exigent circumstances exist and a female officer is not present at the location where the frisk is to be conducted or, if present, is not available to perform the pat frisk.  When a male officer performs emergency pat frisks of female inmates when exigent circumstances exist and no female officers are available, then the pat frisk shall be conducted in a location where there is regular access and traffic by staff, inmates, or both rather than in a more remote or less traveled area.  In facilities with CCTV capabilities, pat frisks should also be conducted in the area where a camera is present.

Note:  When a male Officer is to conduct a pat frisk of a female inmate, the male Officer shall record the date, time, place, and the reason for the pat frisk on Form #1140CGPF, "Report of Cross Gender Pat Frisk – Female Inmate."

(3)   When a male Officer pat frisks a female inmate, the Officer shall not use the palm of the hand when frisking the clothed breast area of the female inmate.  Instead, the Officer shall use the back and side of the hand only and shall use care not to pat the clothed nipples of the inmate.  When frisking the clothed upper thigh of a female inmate, a male Officer shall use care not to pat the clothed genital area of the inmate.  The Officer shall conduct himself professionally, alert to the perceived sensitive nature of the cross gender pat frisk.

(4)   When pat frisking an inmate assigned to a female correctional facility who has been diagnosed with Gender Dysphoria/GID, a male Officer shall not use the palm of his hand when frisking the clothed breast area of the inmate.  Instead, a male Officer shall use the back and side of his hand only and shall use care not to pat the clothed nipples of the inmate.  This limitation is not applicable to a female Officer conducting a pat frisk.  When frisking the clothed inner thigh, groin, or buttocks, an Officer shall use care not to penetrate any genital opening of the inmate.  All Officers shall conduct themselves professionally, alert to the perceived sensitive nature of the frisk.

C.   Mouth Search

   1.   Definition:  A mouth search means a visual inspection of an inmate's mouth.  An inmate will be required to open his or her mouth, remove any dentures, move the tongue up and down and from side to side, and then using a weak hand, pull down the lower lip, and then pull up the upper lip, exposing the gums.

   2.   Application:  Except as conducted pursuant to an authorized strip frisk (see sub-section E below), an Officer may conduct a mouth search only upon reasonable suspicion that the inmate may have contraband concealed in his or her mouth.  Reasonable suspicion may be drawn from an unnatural facial appearance or unnatural sound when talking; or from refusal to talk; or by observing the inmate putting his or her hand or fingers in his or her mouth; or by receipt of information from a reliable informant that the inmate may be concealing contraband in his or her mouth.

D.   Strip Search

   1.   Definition:  A strip search means a search of an inmate's clothes once they are removed and a visual inspection of the inmate's naked body.

      Except as noted, the inmate is not required to display body cavities or perform any other physical acts as described under "Strip Frisk" in sub-section E below.  However, the inmate may be subjected to an inspection of his or her mouth, ears, hair, hands, armpits, and feet as part of a routine block search (see Section V-B).

   2.   Application:  A strip search may be made of inmates:

      a.   When specifically authorized (see Sections IV and V) or upon a finding of probable cause (see sub-section F below); and

      b.   Only in accordance with the strip search/strip frisk guidelines (see sub-section G below).

      Note:  When conducting a visual inspection/body check of an inmate assigned to a male correctional facility who has been issued a permit to possess and wear a bra (such as an inmate diagnosed with Gender Dysphoria/GID or who has breast development), or an inmate assigned to a female correctional facility who has been diagnosed with Gender Dysphoria/GID, and the area supervisor determines further inspection is necessary (e.g., looking for injuries), such visual inspection shall be performed outside the presence of other inmates.  Absent probable cause, the inmate will not be required to remove the bra or undershorts/underwear.  A supervisor of the rank of Sergeant or above shall be present when the removal of the bra is required.

E.   Strip Frisk

   1.   Definition:  A strip frisk means a search of an inmate's clothes and body including a visual inspection of body cavities.  For a male this involves one or more of the following procedures:  a mouth search (see below)*, running his hands through his hair, allowing his ears to be visually examined, lifting his arms to expose his armpits, lifting his testicles to expose the area behind his testicles, and bending over and spreading his buttocks to expose his anus to the frisking Officer.**  For females the procedures are similar except that females must also squat to expose the vagina.

*Mouth Search:  Before removing his shorts (for men) or her bra and panties (for women and those inmates in a male correctional facility who have been issued a permit to possess and wear a bra), an inmate will be required to open his or her mouth, remove any dentures, move the tongue up and down and from side to side, and then using a weak hand, pull down the lower lip, and then pull up the upper lip, exposing the gums.

**Note: An uncircumcised male inmate will not be required to pull the foreskin of the penis back unless there is reasonable suspicion that contraband is concealed underneath the skin.  Staff will provide written documentation articulating the basis of the suspicion and outcome of the frisk.  This memorandum will be submitted to the Captain or equivalent security supervisor for review.

Note:  A strip frisk of an inmate who has been diagnosed with Gender Dysphoria/GID shall be conducted by staff of the same gender as the gender classification of the facility.  Staff shall apply procedures as appropriate based upon the anatomy of the inmate.  The facility (administration/security) shall not search or physically examine a transgender or intersex inmate for the sole purpose of determining the inmate's genital status.  If the inmate's genital status is unknown, a medical provider may determine the inmate's genital status during conversations with the inmate, by reviewing medical records, or, if necessary, by learning that information as part of a broader medical examination conducted in private by a medical practitioner.

2. Application:  A strip frisk may be made of inmates:

    a. When specifically authorized (see Sections IV and V) or upon a finding of probable cause (see sub-section F below); and

    b. Only in accordance with the strip search/strip frisk guidelines (see sub-section G below).

F. "Probable Cause" for Strip Search or Strip Frisk

1. Where an Officer believes an inmate is hiding contraband on his or her body or in anal, genital, or other body cavities, the Officer must report this to a Sergeant or higher ranking Officer to secure permission to conduct a strip frisk.

2. A Sergeant or higher ranking Officer has "probable cause" when he or she has information that would lead a reasonable person who possesses the same expertise as the official to believe under the circumstances that the inmate is hiding contraband on his or her body or in the anal, genital, or other body cavity area. Mere suspicion or belief, unsupported by articulable fact, is insufficient.

3. If the Sergeant or higher ranking Officer finds probable cause and directs the Officer to proceed with a strip search or strip frisk, he or she must record the reason for finding probable cause on Form #1140, "Report of Strip Search or Strip Frisk." This report also documents the inmate's name and number, the time, place, and type (strip search or strip frisk) of search, whether force was used, the name and ranks of person(s) conducting and present at the search, and the results of the search. **The Sergeant or higher ranking Officer must sign this report.**

G.  Guidelines for Strip Searches/Strip Frisks

1.  Staff Demeanor

a.  Only a Correction Officer who is conducting the frisk and a supervisor of the rank of Sergeant or above may be present and able to see the inmate during a strip search or strip frisk unless:

(1)  An inmate has a record of resistance to strip searches, strip frisks, or a record of assaults or attempted assaults on Correction Officers, or the inmate indicates he or she will actively resist the search;

(2)  A major disturbance of the facility requires that inmates be held and searched in groups; or

(3)  The inmate is a possible victim of sexual abuse and is being strip frisked* prior to transportation to an outside hospital (in this particular case a health services provider shall be present, if available).

*Note: Directive #4027B, "Sexual Abuse Reporting & Investigation - Inmate-on-Inmate," provides additional guidance for strip frisks of sexual abuse victims.

b.  Strip searches or strip frisks shall be conducted by an Officer or employee of the same sex as the inmate being searched.

c.  In performing a strip search or strip frisk, Officers shall conduct themselves professionally.  Officers shall be alert to the sensitive nature of the strip search or strip frisk and conduct such searches in a manner least degrading to all involved.

2.  Location/Privacy

a.  Every precaution shall be taken to conduct strip searches and strip frisks in an area or location which provides privacy.

In locations normally used for conducting strip searches or strip frisks, access and traffic by inmates other than those being strip searched or strip frisked shall be limited to the extent possible.

When it is necessary to conduct a strip search or strip frisk outside the facility, the search or frisk shall be conducted in private.

b.  Strip searches or strip frisks shall be conducted in locations heated to a level of human comfort for disrobed persons.

c.  In locations normally used for strip searches or strip frisks, the floor shall have a covering sufficient to protect bare feet from the chill of the floor.

d.  In locations normally used for strip searches or strip frisks, provision shall be made for the placement of the inmate's clothing off the floor.  If conducted elsewhere, provision shall be made for placement of the inmate's clothing off the floor.

e.  Locations normally used for strip searches or strip frisks shall be kept clean and free from dust and accumulations of dirt and grime.  Such areas shall be cleaned at least once daily, either before commencing the day's strip searches or strip frisks, or at the conclusion of the day.

3.  Inmate-Staff Contact

   a.  When inmates cooperate in the conduct of the strip search or strip frisk, the inmate's body shall not be touched except to run fingers through the inmate's hair if necessary.

   b.  When conducting a strip frisk, visual inspection of the anal cavity shall be accomplished by having the inmate bend over and spread the buttocks. For purposes of visual inspection of the vagina, female inmates shall squat and spread their legs.

4.  Use of Force in the Conduct of a Strip Search or a Strip Frisk

   a.  When a strip search has been authorized by a supervisor of the rank of Sergeant or higher and the inmate refuses to submit to the search, a supervisor will be notified and the inmate's refusal will be considered to constitute probable cause to conduct a strip frisk.

   b.  If force is used to complete the strip frisk, the force used shall be in accordance with Directive #4944, "Use of Physical Force."

   c.  The inmate's clothing will be removed with the exception of undershorts for males, bra and panties for females and those inmates in a male correctional facility who have been issued a permit to possess and wear a bra. The inmate's mouth shall be forced open by an employee wearing disposable single-use plastic or rubber gloves for each inmate. Once the mouth inspection is complete, the undergarments will be removed and the remainder of the strip frisk completed.

   d.  The employee who spreads the inmate's buttocks for a visual examination of his or her anal cavity shall wear disposable single-use plastic or rubber gloves for each inmate.

   e.  Where force is used to perform a strip frisk, the incident shall be reported as set forth in Directive #4004, "Unusual Incident Report."

5.  Documentation

   a.  Form #2063, "Certificate of Search," is to be completed for all inmates who, when leaving the facility, receive a strip frisk or strip search.

   b.  Form #1140 is to be completed for all inmates who receive a strip frisk or strip search after a finding of probable cause.

   c.  A facility Captain or highest ranking security supervisor shall be responsible for completing a monthly report of monitoring activities and submitting it to the Deputy Superintendent for Security (or Superintendent in those facilities without a DSS) for review, approval, and filing. These reports will be made available for review by visiting Central Office staff and submitted to Central Office upon request of the Director of CERT Operations.

H.  Body Cavity Search:  (See Division of Health Services Policy 1.37, "Body Cavity Search.")

   1.  Definition:  A body cavity search means a physical examination of an inmate's oral and/or genital cavities by a primary care provider (PCP) (e.g., physician, nurse practitioner, physician assistant, dentist).

2. Authorization

   a. Single inmate:  The Superintendent, Acting Superintendent, or facility Officer of the Day shall not authorize a body cavity search without having first been advised of all circumstances and will base the decision upon evaluation of those circumstances, with particular consideration of the intrusiveness of a body cavity search and only after obtaining approval from the Deputy Commissioner for Correctional Facilities and the Deputy Commissioner/Chief Medical Officer or designee.

   b. More than one inmate:  In instances when a body cavity search is requested or suggested for more than one inmate in a single incident, the Superintendent, Acting Superintendent, or the facility Officer of the Day must gain authorization from the Deputy Commissioner for Correctional Facilities and Deputy Commissioner/Chief Medical Officer or, during non-business hours, the Departmental Officer of the Day.

   c. The Deputy Commissioner for Correctional Facilities and Deputy Commissioner/Chief Medical Officer, or the Departmental Officer of the Day shall not authorize a body cavity search without having first been advised of all circumstances and will base the decision on evaluation of those circumstances, with particular consideration of:

      (1) The intrusiveness of a body cavity search;

      (2) The number of inmates to be searched;

      (3) The imminence and seriousness of the danger of the contraband;

      (4) The likelihood that the contraband was secreted in the body cavities and has not been disposed of; and

      (5) The possible use of less intrusive searches, to either discover the contraband or a narrowing of the group to be searched.

3. Application:  A body cavity search may be authorized only in circumstances where there are compelling reasons to believe that the inmate or inmates to be searched have secreted contraband in an oral and/or genital cavity (rectal cavity searches will not be authorized), the nature of which constitutes a clear threat to the safety and security of the facility and/or a threat to the safety and well-being of any person.  Compelling reasons are limited to:

   a. A foreign object's presence is indicated by a metal detector but is not visible during a strip frisk;

   b. A foreign object is observed to be present during a strip frisk;

   c. Intelligence information possessed by facility administration and/or staff indicates the probability of the presence of contraband in the oral or genital cavities of the inmate or inmates to be searched; or

   d. Probable presence of contraband in the body cavities of the inmate or inmates to be searched is indicated by other observations such as unusual gait, indications of discomfort, particularly while walking or sitting, unusual posture, etc.

4.  Procedure

    a.  This search shall be conducted in accordance with professional standards and in compliance with the Health Services protocol regarding body cavity searches which provides, in pertinent part:  This procedure shall be conducted by a PCP after approval by the Deputy Commissioner/Chief Medical Officer or designee.  The examination must be accomplished in an appropriate examining room using acceptable aseptic techniques for such an exam (e.g., draping, positioning, explanation of the procedure to be performed).  One Correction Officer of the same sex as the inmate must be present as a witness.

    b.  Prior to conducting a body cavity search, the PCP must explain the process to the inmate and the inmate must be given the opportunity to yield the contraband voluntarily.  If the search is for a specific item which is voluntarily yielded, the search shall not continue.  Force should not be used to complete a body cavity search.

    c.  Every precaution shall be taken to ensure as much privacy as is possible under the circumstances.

    d.  On all occasions that a body cavity search is conducted, the incident must be reported, through the unusual incident process under incident type #22, by specifying body cavity search, to the Department's Communication Control Center with the follow-up submission of the required Unusual Incident Report (see Directive #4004, "Unusual Incident Report").

I.  Radiological Detection Search

    1.  Definition:  A radiological detection search means an internal search of the inmate's person via the use of equipment such as X-rays.

    2.  Authorization:  A radiological detection search will be performed only with the express authorization of the Superintendent, Acting Superintendent, or facility Officer of the Day, and only after consultation with the facility's Health Services Director or designee to ensure that such a search will not be injurious to the inmate's health.

    The Superintendent, Acting Superintendent, or facility Officer of the Day shall not authorize a radiological detection search without having first been advised of all circumstances and will base the decision upon evaluation of those circumstances, with particular consideration given to the sensitivity of a radiological detection search.

    3.  Application:  A radiological detection search may be authorized only in circumstances where there are compelling reasons to believe that the inmate or inmates to be searched have secreted in their bodies contraband, the nature of which constitutes a clear threat to the safety and security of the facility and/or a threat to the safety and well-being of any person.

J.   Native American Medicine Bag Search

   1.   A Native American shall hold his or her medicine bag open for visual inspection by the Correction Officer.  If the inmate is not present or if special security concerns exist (e.g., the Native American inmate refuses to open the medicine bag or threatens, assaults, or attempts to assault staff or other inmates, or the inmate or the medicine bag pose a threat to the safety and security of the facility), then the medicine bag may be held open by the Chaplain.  If the Chaplain is not available, the bag shall be secured by the Correction Officer in an area designated by the Deputy Superintendent for Security until the Chaplain is present.  If exigent circumstances exist, however, the Superintendent may authorize the search of a bag without a Chaplain, provided a Lieutenant or higher ranking Officer is present when the bag is opened for visual inspection.

   2.   A medicine bag may be scanned at any time with a metal or other electronic detector.

   3.   The contents of a medicine bag may be tested for illegal substances if contraband is suspected, pursuant to the provisions of Directive #4938, "Contraband Drug Testing."

## IV.   SITUATION SEARCHES

A.   Transfer:  When an inmate is transferred from one DOCCS facility to another, he or she will be strip frisked and subjected to a metal detector search at the facility from which he or she is being transferred.  The Officer conducting the search shall file Form #2063.  In the absence of probable cause, the inmate will not be strip searched or strip frisked at the receiving facility.  A metal detector search will be conducted by the receiving facility.  If it becomes necessary to conduct a clothing exchange, the inmate will not be required to remove his or her underwear (undershorts-males/bra and panties-females/gender appropriate undergarments).

B.   Contact Visits:  All inmates in medium and maximum facilities shall be strip frisked and subjected to a metal detector search after a contact visit.  They may not be strip frisked after non-contact visits.  (See also sub-section I below.)

C.   Attorney Visits:  Inmates have the option of having non-contact visits with Attorneys.  In the absence of probable cause, no strip searches or strip frisks may be conducted after non-contact Attorney visits.

D.   Special Housing Units (Disciplinary and/or Protective Custody) Frisks

   1.   An inmate is to be strip frisked and subjected to a metal detector search on reception in the Special Housing Unit, disciplinary and/or protective custody, and in accordance with sub-section I (below) after visits.  Form #1140SHU, "Report of Strip Frisk on Admission to SHU or MHU Cell/Room," must be completed.

   2.   An inmate will be pat frisked and hand scanned with a metal detector before leaving the Special Housing Unit or upon returning to the Special Housing Unit from any activity within the facility.

3. When an inmate is transferred from one facility SHU to another facility SHU, he or she will be strip frisked on exiting the facility, but may not be strip searched or strip frisked upon entry to the receiving facility and/or its SHU in the absence of probable cause.  If it becomes necessary to conduct a clothing exchange, the inmate will not be required to remove his or her underwear (undershorts-males/bra and panties-females and those inmates in a male correctional facility who have been issued a permit to possess and wear a bra).

4. No other strip search or strip frisk of an inmate in a Special Housing Unit may be conducted unless in accordance with other provisions of this directive.

E. Restriction/Secure Units

1. Inmates admitted to restriction or secure units, may be used at work release facilities or at other facilities for inmates awaiting transfer, will be strip frisked and undergo a metal detector search.  Form #1140WRF, "Report of Strip Frisk on Admission Restriction/Secure Unit," will be completed for each event.

2. Inmates at work release facilities on restriction, who are placed off the unit because of an overflow, will be strip frisked and undergo a metal detector search upon their return to the restriction unit since they would have stayed in open housing overnight.

F. Psychiatric Housing

1. Each inmate admitted to an individual cell shall be subjected to a strip frisk (use Form #1140SHU).

2. An inmate placed on a Suicide Watch shall be subjected to a strip frisk regardless of the physical location of the Watch (use Form #1140SHU).

   Note: The Psychiatric Housing cell/room shall be thoroughly searched prior to and at the conclusion of the OMH admission.  The Officer performing the search shall record the date, time, and findings in the logbook.

   An inmate admitted to a dormitory or multiple occupancy housing unit may only be subjected to a strip frisk/strip search upon probable cause (use Form #1140).

G. Release Without Correctional Supervision:  An inmate may be strip frisked and subjected to a metal detector search upon return to a correctional facility from a period of temporary release, furlough, work release, etc.  When leaving the facility, the inmate will not be strip searched or strip frisked.

H. Escorted Trip

1. Departure:  Each inmate scheduled for an escorted trip shall be subjected to a strip frisk prior to departure.

2. Enroute:  While outside the facility, a Correction Officer may authorize or conduct a strip search or strip frisk upon a finding of probable cause only if a supervisor of the rank of Sergeant or higher is not present and a reasonable attempt has been made to contact a supervisor of the rank of Sergeant or higher.  The Officer shall prepare Form #1140.

3. Return:  Upon return, the escorting Officer shall contact a Sergeant or higher ranking Officer to request authorization for a strip frisk or strip search if, during the outside trip, the escorting Officer has:

   a. Lost sight of the inmate or his or her hand movements, and

   b. Believes the inmate has contraband.

If the Sergeant or higher ranking Officer directs a strip search or strip frisk for reasons a. and b., they shall prepare <u>Form #1140</u> to document their authorization and the reason(s) for the search or frisk of the specified inmate.

I.   <u>Visits:</u>  For the purpose of this section, a visit is defined as a meeting between an inmate and his or her family, friends, legal counsel, and any other authorized persons in an area designated for this purpose.  Search procedures for visitors are set forth in Directive #4403, "Inmate Visitor Program," and Title 7 NYCRR Part 200.

Note:  Visiting area is to be searched for contraband prior to visiting hours and after visiting hours before porters clean same.  Trash must be removed immediately after visitation to a secure area under direct supervision or by security staff.

Note:  In female facilities where babies are in residence and along with the mother, visit a third party, the infant will be searched in the same manner as the mother.

1.   Maximum and Medium Security Facilities

   a.   Prior to a visit, an inmate is to receive a pat frisk.  The inmate shall then either be passed through a walk-through detector or scanned thoroughly with a hand-held metal detector.  In addition, the BOSS chair may be utilized.

   b.   After a contact visit, an inmate shall be strip frisked.  The inmate may not be strip frisked after a non-contact visit.

2.   Minimum Security Facilities

   a.   An inmate shall receive a pat frisk and metal detector search before and after a visit in a minimum security facility.

   b.   An inmate may receive a strip frisk after a visit in a minimum security facility per authorization by a supervisor, rank of Sergeant or above.

3.   Community-Based Facilities

   a.   An inmate shall not receive a pat frisk before a visit in a community-based facility unless so ordered by the Superintendent or designee.

   b.   An inmate shall receive a pat frisk and metal detector search after a visit in a community-based facility.

   c.   An inmate shall not receive a strip frisk after a visit in a community-based facility unless so ordered by the Superintendent.

J.   <u>Drug & Special Watches - Temporary Isolation:</u>  This section applies to those circumstances requiring the temporary isolation of an inmate when there is "probable cause" to believe that the inmate has either ingested a contraband item or inserted a contraband item into the rectal cavity.

1.   Authorization:  Admission to temporary isolation shall only be authorized by the Superintendent, Acting Superintendent, Deputy Superintendent for Security, or Officer of the Day.

2.   Medical Notification/Evaluation:  Prior to the start of a "Drug" or "Special Watch," the inmate shall be evaluated by a nurse.  After evaluation, the nurse will notify the Facility Health Services Director (FHSD) or designee of his or her findings.  If the FHSD or designee, and all other physicians, nurse practitioners or physician assistants are not at the facility, the nurse will notify the on-call physician.  Based on the information available and the nurse's findings, the on-call physician will decide if an in person physician evaluation or telemed encounter is needed for further medical management prior to placement in temporary isolation.

3. Location:  Each facility shall identify a cell(s) or room(s) for the purpose of placing a suspected inmate in temporary isolation on a Drug or Special Watch.

   Such cell(s) or room(s) shall be located in an area designated by the Superintendent.

4. Furnishings

   a. The cell(s) or room(s) will be furnished with a bed, mattress, pillow, bed linen, blanket, and a bedpan.

   b. The inmate will not be permitted his or her personal clothing.  He or she shall be provided with hospital clothing or:

   | | |
   |---|---|
   | 1 set underwear | 1 pair slippers |
   | 1 pair pants or skirt | 1 pair socks |
   | 1 shirt or blouse | |

   c. The inmate shall be issued the following personal hygiene items:

   | | |
   |---|---|
   | 1 bar hand soap | toothpaste and/or denture cleaner |
   | toothbrush | 1 hand towel |

5. Procedure

   a. The water supply to the cell/room shall be turned off.

   b. The inmate shall have opportunity to use issued personal hygiene items either by being provided with a basin of warm water, the bar of soap, and hand towel or being removed from the cell as directed and at intervals scheduled by the Deputy Superintendent for Security, at a minimum, five times per day, as follows:  approximately 30 minutes prior to service of each meal, once at the beginning of tour 1 (nights), and once during tour III (evenings).  Furthermore, upon request of the inmate following urination and/or defecation.  Each time the inmate is provided water, it needs to be documented in the unit log book.

   c. The Drug/Special Watch room shall be thoroughly searched prior to and at the conclusion of the Watch.  The person performing the search shall record the date, time, and findings in the Drug/Special Watch logbook.

   d. The inmate shall be subjected to a strip frisk prior to entering the Drug/Special Watch cell/room (use <u>Form #1140</u>).

   e. The inmate shall remain isolated for a period not to exceed 48 hours unless:

      (1) A defecation containing contraband occurs, in which case the inmate will be retained until two negative defecations occur; or

      (2) Two negative defecations do not occur within 48 hours, in which case the inmate will be retained until two negative defecations occur; or

      (3) A radiological detection search conducted pursuant to Section III-I of this directive indicates the presence of a contraband item which remains in the inmate's body.  In this case, the temporary isolation may continue for up to seven days with the written approval of the Superintendent or designee, and the FHSD or designee will be notified.

f. In any case where the temporary isolation period exceeds 24 hours, a DOCCS Health Services nurse shall visit the inmate at least once every 24 hours. A complete set of vital signs and patient evaluation will be done and documented in the Ambulatory Health Record (AHR). Any abnormal findings will be reported to the FHSD or designee, or "on-call" physician. A facility physician, nurse practitioner or physician assistant will evaluate the inmate in person, every three days and document findings in the AHR.

g. A chronological log shall be maintained which shall include, but not be limited to, visits by medical and/or other staff, negative defecation, defecation containing contraband, Unusual Incidents, or an incident relative to the situation.

h. Form #2147, "Drug/Special Watch Isolation Report," shall be completed in duplicate upon conclusion of the inmate's temporary isolation. The original shall be forwarded to the Superintendent and a copy to the guidance and counseling folder.

i. Instructions: The Officer assigned to supervise Drug/Special Watch will instruct inmate that upon urination and/or defecation, he or she is not to wipe himself or herself nor reach around to touch his or her rectal/genital area until the inmate passes the bedpan, with defecation sample, to the Officer for inspection. The Officer will then give the inmate a clean bedpan and toilet paper and hygiene materials (basin of warm water, hand soap, and hand towel) for use. Once those items are returned, the Officer is responsible for searching the fecal matter (defecation sample) for contraband. The Officer shall wear rubber gloves and search for contraband using a tongue depressor or other facility approved method. If contraband is found, it shall be processed in accordance with Directive #4910A.

## V.   SEARCHES OF FACILITY SPACES

### A.   Definitions

1. Cell:  Secure room utilized to house an individual inmate or multiple inmates.

2. Gallery:  Common area located immediately in front of cells.

3. Catwalk/Pipe Chase:  A narrow, sometimes elevated pathway behind, or adjacent to cells utilized to access plumbing/electrical utilities and/or block windows. These areas may provide access to a secure control; console or post.

4. Block:  A large area of the facility comprised of a group or cluster of single and/or multiple occupancy cells.

5. Control Console:  A secure, self-contained unit designed to maintain the security of the facility.

6. Employee Post:  Any area of the facility to which an employee is assigned and/or is present.

7. Inmate Work Station:  Any area in the facility where an inmate is assigned to work.

8. Tunnel:  Subterranean enclosed pathway below any portion of a facility which leads to another area of the facility, including utility pathways.

9. Attic:  Area above any portion of a facility between the occupied space/spaces and the actual roof/roofs of any portion of the facility.

10. Basement: Area below any portion of a facility between the occupied space/spaces and the foundation floor/floors of any portion of the facility.

11. Search: To examine a place, area, person, or object carefully in an attempt to find something or someone missing or concealed.

B.   Routine/Scheduled Searches

1.   Routine Block Searches: A routine block search is an area search involving inmate living quarters in which housing units (e.g., a tier of cells, company, pod, etc.) are periodically searched in accordance with a schedule issued by the Deputy Superintendent for Security or equivalent.

During a routine block search, each inmate present may be strip searched and subjected to an inspection of his or her mouth, ears, hair, hands, armpits, and feet.

During such searches, a supervisor will make rounds of each gallery or housing unit area upon completion of that area being searched to determine if any complaints exist. The supervisor will document his or her round/inspection in the unit log. Documentation by the supervisor will be made in red ink.

2.   Routine Area Searches: A routine area search is an area search of a specified area of a facility to promote the safety and security of the facility (e.g., shop area, kitchen, mess hall). Note: Religious areas are to be searched in accordance with Section V-E.

A routine area search may be authorized by the facility Superintendent. However, a similar search of a smaller area of the facility, such as a shop, recreation yard, etc., may be authorized by the Deputy Superintendent for Security.

When a routine area search has been authorized, the Superintendent must ensure that it is carried out by designated correctional personnel under close supervision. It should be scheduled to minimize disruption of regular operations, absent of inmates, and be accomplished in the shortest time possible.

However, if inmates are present, they will be pat frisked and may also be scanned with a hand-held metal detector.

Note: Strip searches or strip frisks may not be conducted without the expressed consent of the Deputy Commissioner for Correctional Facilities (see Section V-C-3).

3.   Routine Cell Searches: Each day, the living quarters of a number of inmates in each housing unit will be searched by correctional employees in accordance with a schedule issued by the Deputy Superintendent for Security or equivalent. This schedule will ensure that each inmate's cell, cube, or room is randomly searched a minimum of once every 60 days. The time of cell searches must be varied so as not to establish a predictable pattern. Cell searches will be thorough and include: bar and hammer examinations, vent and toilet inspections, sink inspections, and wall, ceiling, floor, and window integrity checks.

Inmates present shall be pat frisked and may also be scanned with a hand-held metal detector.

4.   Security Inspections: Regular inspections are considered fundamental in the proper maintenance of secure correctional facilities. The utmost vigilance will be exercised while conducting security inspections of all areas including, but not limited to inmate living quarters, catwalk/pipe chases, basements, attics, and tunnels. Careful attention shall be given to ensure the integrity of:

a.   Bars

b.   Gates

c.   Fences

d.   Windows

e.   Locks/Locking mechanisms

f.   Interior/exterior/perimeter walls

g.   Floors

h.   Ceilings

i.   Secure Cabinets

j.   Vents

k.   Security screens

l.   Lighting/plumbing fixtures

m.   Grates

n.   Manhole covers

Additionally, staff while conducting routine duties such as security rounds, cell searches, counts, etc. should remain vigilant as to detect anything out of the ordinary such as but not limited to:

a.   Obstructed areas

b.   Damaged/cracked walls, floors, and ceilings

c.   Discolored walls and ceilings

d.   Cell door integrity

Note:  Cell door integrity must be accomplished when conducting the count by the Officer pushing and pulling on each cell door to ensure it is locked and secure. This will supplement the electronic verification indicator lights, if so equipped

During the physical inspection of these items and areas a department issued rubber mallet and/or baton will be utilized to assist in the thorough examination.  All staff are responsible to ensure that any obvious or suspected breaches of security are reported immediately to a Security Supervisor.

5.   The Deputy Superintendent for Security will establish a schedule for security inspections of facility:

a.   Catwalk/Pipe chases-weekly,

b.   Basements-monthly at a minimum,

c.   Attics-monthly at a minimum,

d.   Tunnels-monthly at a minimum.

e.   Manhole Covers/Drainage Gate-monthly at a minimum.

f.   Cell integrity check-weekly

Note:  Each security supervisor will physically report to one of their assigned areas of responsibility for the inspections identified.  This supervisor will observe security staff performing the inspections and ensure that proper procedures are followed. The security supervisor will indicate in the unit log book his/her presence for the inspection, and sign the log book indicating that the inspection was observed.

These inspections must be recorded in the Watch Commander's logbook. The supervisor will report this inspection on Form #4001B, "Daily Security Supervisor Report" for submission to the Watch Commander who will ensure this report is forwarded to the Deputy Superintendent for Security for review and retention.

Additionally, the Deputy Superintendent for Security shall establish a schedule for security inspections of inmate living quarters and security control points to ensure that all security apparatus and living quarters' equipment are present, intact, and functional. Such inspections will occur at a minimum once per week. The time and day of the inspections must be varied so as not to establish a predictable pattern. Any contraband observed in inmate living quarters or concealed in cell equipment will be immediately confiscated by the Officer performing the search and properly processed. The results of each security inspection will be reported in writing to the Superintendent.

6.  The facility Deputy Superintendent for Security shall coordinate with the Director of CERT Operations to establish a schedule for security inspections of facility tunnels to be conducted, on a quarterly basis, by members of CERT Teams not assigned to the facility.

7.  Random Work Station Searches:  Each day, the assigned work stations of a number of inmates in each industry area will be searched by security staff in accordance with a schedule issued by the Deputy Superintendent for Security or equivalent. This schedule will ensure that each work station is randomly searched weekly at a minimum.

C.  Unscheduled/Response-Type Searches

1.  Area Searches:  Area search means a large specified area of a facility is to be searched due to an incident or series of incidents (e.g., shop area, kitchen, mess hall, and housing unit).

    An area search may be authorized by the facility Superintendent. A similar search of a smaller area of the facility, such as a shop, a tier of cells, recreation yard, etc., may be authorized by the Deputy Superintendent for Security (DSS).

    When an area search has been authorized, the Superintendent must ensure that it is carried out by designated correctional personnel under close supervision. It should be scheduled to minimize disruption of regular operations and be accomplished in the shortest time possible.

    Inmates present shall be pat frisked and may also be subjected to a metal detector search.

    NOTE:  Strip searches or strip frisks may not be conducted without the expressed consent of the Deputy Commissioner for Correctional Facilities (see Section V-C-3).

2.  Overall Facility Search:  Overall facility search means the search of the entire facility. An overall search of a facility may be undertaken only after the Superintendent consults with the Deputy Commissioner for Correctional Facilities. After consultation, the Superintendent will then electronically submit this request via email to the Deputy Commissioner for Correctional Facilities. The request and rationale for an overall facility search must be clearly delineated by the Superintendent and shall be directly related to the facility's safety, security, and

operations.  The Deputy Commissioner for Correctional Facilities will consider the request and provide a written response after consultation with the Commissioner.

3.  Search in Response to Major Threat:  In response to a major threat to the security of a facility, the Commissioner or the Deputy Commissioner for Correctional Facilities may authorize an overall or area search and a strip frisk of the inmates present.

    Note:  Only the Commissioner or Deputy Commissioner for Correctional Facilities can authorize the strip frisk or strip search of a group of inmates in conjunction with an overall or area search.  If the Superintendent finds probable cause, he or she shall request approval to conduct this search/frisk from the Deputy Commissioner for Correctional Facilities.

    Example of a "major threat:" An inmate is stabbed on a gallery or in a dormitory.  In the aftermath of the incident, the gallery is sealed off and the facility requires all inmates to be strip frisked to search for weapons.

4.  Unscheduled Cell Searches:  An unscheduled search of the living quarters of an inmate shall be conducted only when there is a reasonable suspicion that contraband is contained in the housing unit.  Such search must be authorized by a supervisor except that when there are reasonable grounds to believe that a search is immediately necessary to prevent death, injury, or the destruction of contraband, the employee may conduct the search and then submit a written report to his or her supervisor explaining the urgency of the search and its results.

D.  Placement of Inmates

1.  General Confinement:  The search of a general confinement housing unit may be conducted with or without the inmate being present.  If the inmate is removed from quarters prior to the search, he or she shall be placed outside the immediate area to be searched, but allowed to observe the search.  However, if, in the opinion of a supervisory security staff member, the inmate presents a danger to the safety and security of the facility, the inmate shall be removed from the area and not allowed to observe the search.

    Note:  When an inmate is removed and not allowed to observe the search, the security supervisor making this determination will document the reason for their determination in the area logbook and in a memorandum to the Watch Commander.

    Note:  If an inmate is being moved to a different housing location (within the same or another facility) or released (temporarily or permanently), the packing up of property by staff incident to that move or release shall not be deemed a search for purposes of this subsection.  The inmate need not be present to observe the pack up.

2.  Special Housing:  The search of a Special Housing Unit cell shall be conducted with the inmate removed from the cell for the duration of the search.  The inmate shall be placed in a vacant cell and not allowed to carry anything.  If a vacant cell is not available, the inmate is to be taken to a secure area and held for the duration of the search.

    Note:  Inmates assigned to a double cell at Five Points CF, Upstate CF or any SHU 200 must be removed from the cell, not placed in the cell exercise pen.

E.   <u>Religious Areas</u>:  Prior to beginning any search in a facility religious area (Protestant Chapel, Catholic Chapel, Mosque, Native American group locker, etc.), the supervisor in charge of the search will ensure that a member of the facility Ministerial Services staff is physically present to properly safeguard legitimate religious artifacts.  If an emergency condition exists, the Superintendent may authorize the search of the facility religious area without the presence of the facility Ministerial Services staff, however a Lieutenant or higher ranking Officer will be present.

The supervisor in charge of the search shall maintain open communication with the Ministerial Services representative throughout the duration of these area searches.

Whenever the representative of Ministerial Services and the supervisor in charge are unable to agree on procedural matters, it shall be the responsibility of the supervisor to contact the Deputy Superintendent for Security for resolution.

F.   <u>Searches of Quarters and Property</u>

1.   The search of an inmate's living quarters shall be thorough and orderly.  All State and personal property shall be examined carefully.  Staff should remain vigilant as to detect any abnormalities; including, but not limited to: obstructed areas, damaged/cracked/discolored bars, gates, windows, walls, floors, ceilings, light fixtures, plumbing, and vents, etc.  A department issued rubber mallet and/or baton will be utilized to accomplish this task.

2.   Care and caution shall be taken to avoid damage or destruction to property.  Every effort shall be made to leave the living quarters in the same condition they were prior to search.  If possible, items are to be returned to the approximate position in which they were found or placed in an orderly fashion on the bed.  If an inmate's property is damaged, the employee conducting the search shall report it to his or her supervisor in writing, with a copy to the Deputy Superintendent for Administrative Services.

3.   All searches of religious items shall be conducted in such a manner as to respect their religious significance.  A Native American's medicine bag shall only be searched in accordance with Section III-J above.

Whenever the religious authenticity of an item found in an inmate's cell is questioned, its authenticity shall be verified by a member of the facility's Ministerial Services staff.

4.   All contraband items found shall be processed in accordance with Directive #4910A.  If no item has been confiscated and no misbehavior report written, that fact should be indicated on <u>Form #2077</u>, "Cell Frisk/Contraband Receipt," and a copy provided to the inmate.

NOTE:  False statements made herein are punishable as a Class A misdemeanor pursuant to section 210.45 of the Penal Law of the State of New York.  In addition to the potential criminal charges, knowingly making a false statement could lead to Departmental disciplinary action.

G.   <u>Documentation</u>

1.   Unit Logs: The Officer in charge of an inmate housing unit shall maintain a log for recording searches of inmate living quarters, to include housing unit common areas such as showers, bathrooms, day rooms, slop sinks, storage area, telephone etc.  This log shall include:

a.   Name and number of the inmate whose living quarters is searched;

   b.   Date and time of search;

   c.   Names of Officers conducting search;

   d.   List of contraband found;

   e.   Name of supervisor authorizing search;

   f.   List of any State or inmate property damaged; and

   g.   Cell integrity items including, but not limited to: walls, floors, ceilings, sinks, vents, and bars, etc., have been inspected.  An entry will also be made indicating any deficiencies noted.

   h.   It is the duty of the Sergeant assigned to an inmate housing area to make weekly inspections of these logs to ensure that all scheduled and unscheduled cell/cube searches are being completed and properly logged.  The housing area Sergeant is to sign his or her name in red ink on the line after the last entry made at the time of his or her check and date same. These inspections must be indicated on the Form #4001B, "Daily Security Supervisor Report."

2.   The location of any area or overall search will be documented in a separate logbook maintained by the DSS.  The date, time, location, area supervisor in charge of the search and the results of the search must be included.

3.   Reports of Findings:  In addition to log entries and reviews required above and by Directive #4091, "Logbooks," the findings of overall or area searches are to be documented and promptly reported to the Superintendent.  Findings of overall searches shall also be promptly reported to the Deputy Commissioner for Correctional Facilities.

**VI.   CONTRABAND/EVIDENCE- HANDLING/DISPOSITION**:  See Directive #4910A for the necessary guidelines to be followed for the contraband/evidence management program.  All recovered contraband, serious/dangerous or otherwise, shall be documented based upon the type of the contraband and the circumstances under which it was discovered (see Attachment A, "Recording/Logging").

## Contraband Recording/Logging

All recovery of contraband, serious/dangerous or otherwise, shall be recorded by means of completion of one or more of the following written records based on identification and definition.

1.  Contraband associated or by definition determined to meet the criteria of an Unusual Incident will report via the FUI0 Electronic Reporting System in accordance with Directive #4004 "Unusual Incident Report."

2.  All serious non-Unusual Incident contraband must be reported via the FUI0 Electronic Contraband Reporting System within 24 hours of recovery.  All monthly facility contraband/evidence information will be obtained via the FUI0 Electronic Contraband Reporting System.

3.  All other contraband should be documented as appropriate, utilizing:

    a)  Area log, search log, and any other log kept where search results are recorded and contraband is secured or destroyed;

    b)  Misbehavior Report, Form #2171 and Form #2171C (see Directive #4006, "Reporting Inmate Attitude and Behavior").  All articles confiscated, contraband or other, shall be listed;

    c)  Form #2077, "Cell Frisk/Contraband Receipt," if applicable;

    d)  Form #1140, "Report of Strip Search or Strip Frisk," if applicable;

    e)  Form #1140-WRF, "Report of Strip Frisk on Admission Restriction/Secure Unit;"

    f)  Form #1140SHU, "Report of Strip Frisk on Admission to SHU or MHU Cell/Room;"

    g)  Form #1140CGPF, "Report of Cross Gender Pat Frisk – Female Inmate;"

    h)  Form #2062, "Search Contraband Report," after a search of living quarters;

    i)  Form #2063, "Certificate of Search," after a search of inmates being transported;

    j)  Form #2068, "Authorization for Disposal of Personal Property," if the inmate is given a choice of disposition (see Directive #4913, "Inmate Property");

    k)  Form #2080, "Request for Test of Suspected Contraband Drugs," if appropriate (Note: The chain of custody of evidence is recorded on this form.  See Directive #4938, "Contraband Drug Testing.");

    l)  Form #2081, "Contraband Test Procedure," to record testing and results of suspected contraband drugs (see Directive #4938); and/or

    m)  Form #2147, "Drug/Special Watch Isolation Report," if applicable.