UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

TAHEEN HAYES,

                              *Plaintiff*,

        -against-

TIMOTHY DAHLKE, JASON MEIER, GREGORY LANGTRY, STEPHEN BENCE, EDWARD COON, KRISTOPHER HOFFMAN, JAMES IARUSSO, RAYMOND SHANLEY, AND DANIEL MARTUSCELLO,

                              *Defendants*.

**DECLARATION**

1:16-CV-1368

(TJM/CFH)

---

      Raymond Shanley, on the date noted below and pursuant to § 1746 of title 28 of the United States Code, declares the following to be true and correct under penalty of perjury under the laws of the United States of America:

      1.     I am employed by the New York State Department of Corrections and Community Supervision ("DOCCS"). I have been so employed for approximately 35 years.

      2.     I currently hold the position of Superintendent of Coxsackie Correctional Facility ("Coxsackie"). In this role, I oversee the day-to-day operations of the facility. I have held this position for approximately 7 months.

      3.     At the time of the events at issue in this lawsuit, I was the Deputy Superintendent of Security ("DSS") at Coxsackie. I held that position for approximately 2 years. In this role, I was responsible for the security of the facility and supervision of security staff members. Additionally, I frequently made rounds of Coxsackie with the Superintendent. During those rounds, I would often speak to a number of inmates.

1

4.     I am a named defendant in this matter and make this declaration in support of Defendants' motion for summary judgment.

5.     The information contained herein is based upon my personal knowledge and a review of records maintained in the ordinary course of business by DOCCS.

6.     It is my understanding that Plaintiff Taheen Hayes (DIN 05-A-3850) alleges that: on or around May 23, 2016, while I was on rounds with Defendant Martuscello (Superintendent at that time) in the Special Housing Unit ("SHU"), Plaintiff informed us that Defendant Meier (a Correction Officer ("CO") at that time) had written a fabricated misbehavior report against him and had threatened him with physical harm on May 16, 2016; we advised Plaintiff to handle this issue through the disciplinary process; and, by allegedly ignoring Plaintiff's complaint about Defendant Meier, Defendant Martuscello and I failed to protect him from an alleged assault by Defendant Meier that occurred on July 30, 2016.  *See* Am. Compl., Dkt. No. 12, ¶¶ 32-33, 53-60.

7.     There is no merit to these claims.

8.     When Defendant Martuscello and I went on rounds together at Coxsackie, inmates would often complain about misbehavior reports or tickets they had received and ask us to review them.  In response, we would advise inmates to handle their tickets through the disciplinary process.  According to DOCCS procedure, before the Superintendent may review an inmate's ticket, the inmate must have a disciplinary hearing and receive a disposition on his ticket.  Once that has occurred, the Superintendent reviews the ticket, hearing transcript and disposition, to ensure that the process was fair and that any penalties rendered were appropriate.

9. To the extent Defendant Martuscello and I advised Plaintiff to handle any issue through the disciplinary process, it would have been to handle his misbehavior reports through the disciplinary process.

10. The Superintendent and DSS do not advise inmates to handle complaints about COs or other security staff through the disciplinary process.

11. I have no specific recollection of speaking directly to Plaintiff concerning any alleged threats or harassment by Defendant Meier in May of 2016. However, it is my understanding that Plaintiff claims he reported alleged threats made by Defendant Meier to Defendant Martuscello and me, as Superintendent and DSS, respectively, during rounds on or about May 23, 2016.

12. Although inmates frequently make such complaints without any basis (as they are easy to fabricate), we take each complaint seriously and handle it according to DOCCS procedure.

13. When an inmate makes a verbal complaint about alleged threats from a CO, a Sergeant is assigned to assess the credibility of the complaint and determine whether a formal investigation is required. As part of a formal investigation, the Sergeant will interview the inmate and direct the accused CO to provide written response to the allegations. Neither the Superintendent nor DSS are involved in the investigation.

14. When an inmate files a grievance about alleged threats from a CO, the process is similar to the process for verbal complaints; the grievance is delegated to a Sergeant to investigate the grievance, and that Sergeant will interview the inmate and direct the accused CO to provide a written response to the allegations. Neither the Superintendent nor DSS are involved in the grievance investigation.

15. If an inmate makes a verbal complaint <u>and</u> files a grievance about alleged threats from a Correction Officer, the grievance investigation serves as the formal investigation on the verbal complaint in order to avoid duplicating efforts.

16. If, during the course of an investigation, the inmate's complaint about staff is found to be credible, the investigation will be referred to the Office of Special Investigations ("OSI") for handling.

17. While I do not specifically recall the events of May 2016, there is no reason to believe that the process for verbal complaints about staff did not occur here. (To my knowledge, Plaintiff did not grieve alleged verbal threats by Defendant Meier.)

18. Contrary to Plaintiff's allegations, Defendant Martuscello and I did not fail to act on Plaintiff's verbal complaints. I have been informed by counsel that one of Plaintiff's exhibits to his Amended Complaint confirms that we took steps to address Plaintiff's concerns and that they were being handled by other staff. *See* Dkt. No. 12-2, p. 13. And, while there is no additional documentation of Plaintiff's verbal complaint or a subsequent investigation, the lack of documentation indicates that the assigned Sergeant found that Plaintiff's complaint was not credible and a formal investigation was not required.

19. Additionally, it is my understanding that Plaintiff alleges Nurse Tuohy was present during the exchange between Plaintiff and Defendant Meier subsequent to his keeplock[1] admission interview on May 16, 2016. Dkt. No. 12, ¶¶ 23-25. Nurses, and any other staff who witness inappropriate behavior towards inmates, are required to report it. To my knowledge, Nurse Tuohy

---

[1] Inmates may be admitted to keeplock pending a review of and disciplinary hearing on a misbehavior report, depending on the seriousness of the offense(s) charged in such misbehavior report.

4

did not report the exchange between Plaintiff and Defendant Meier, indicating that Defendant Meier did not act inappropriately towards Plaintiff on May 16, 2016.

20. I have seen nothing in DOCCS records to support Plaintiff's claims of alleged threats by Defendant Meier, or to otherwise indicate that there was a real threat of danger to Plaintiff at that time.

21. The alleged "assault" of Plaintiff by Defendant Meier that occurred on July 30, 2016 was a documented use of force wherein Plaintiff was the aggressor, not Defendant Meier. The Use of Force report indicates that only necessary and appropriate force was used to regain control of an assaultive, non-compliant inmate, and that such force was unrelated to any alleged threats made by Defendant Meier. *See generally*, Declaration of Helena O. Pederson ("Pederson Dec."), Exhibit D.

22. To the extent Plaintiff alleges that Defendant Martuscello or I should have transferred him to another facility, or assigned Defendant Meier to a block where Plaintiff was not housed, Plaintiff misunderstands our roles. Neither the Superintendent nor the DSS are able to transfer inmates to other facilities; transfer is handled by the Office of Classification and Movement and the inmate may be assisted by his counselor. Likewise, neither the Superintendent nor the DSS are responsible for CO assignments; those are handled by Chart Sergeants.

23. There is no merit to Plaintiff's allegations against me. I acted professionally and in accordance with DOCCS rules, regulations, directives, and procedures at all times.

24. Based upon the forgoing, I respectfully request that the Court grant Defendants' motion for summary judgment.

Dated: August 20, 2018
Coxsackie, New York

_____
Raymond Shanley

6